Argued March 19, affirmed April 5, reconsideration denied May 12,
petition for review denied June 15, 1976

## STATE OF OREGON, *Respondent,*
### *v.*
## ARNOLD MAXWELL HARRIS, *Appellant.*
### (No. 75-738, CA 5183)
547 P2d 1394

Argued and submitted March 19, 1976.

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

## LANGTRY, J.

Defendant was charged in two indictments with one count of murder, one count of attempted murder, two counts of kidnapping in the first degree and two counts of committing a felony while armed with a concealable weapon. ORS 163.115, 163.235, 166.230. He was convicted in a jury trial, on both indictments, of the included crimes of criminally negligent homicide, two counts of kidnapping in the second degree and two counts of committing a felony while armed with a concealable weapon, and sentenced for the homicide and the counts of kidnapping in the second degree and committing a felony while armed with a concealable weapon, the first two concurrent and the latter consecutive. ORS 163.145, 163.225, 166.230.

On appeal he alleges reversible error in the following respects: (1) that bloodhound evidence offered at trial should have been excluded, and (a) that if it is not excluded his objection thereto should have been sustained because a proper foundation was not laid therefor; and (2) that motions to suppress evidence should have been allowed (a) with reference to articles which were taken from defendant's and defendant's father's residences under a search warrant, (b) with reference to evidence taken from defendant's automobile because the stopping of the automobile was not based upon reasonable suspicion that defendant had committed a crime, and (c) with reference to evidence later recovered under a search warrant from the same automobile after it had been towed by police direction into a different county. We have not found these allegations to constitute error.

In view of the verdicts the evidence which the jury obviously believed included the following: On April 24 one Rikala and his friend Smith drove a pickup truck into a remote forested area of Douglas County seeking down cedar logs which they could cut into sections, ostensibly for firewood, but which they were going to sell to mills that would process the same. They were

[ 73 ]

going to take, and had previously taken from other areas, such cedar wood, which they had no permission to take, from property which they did not own. They located such a log alongside a forest road and proceeded to cut it into usable lengths with a chain saw. This location was within chain-saw-hearing distance from defendant's home (where he lived alone). While so engaged a man whom Rikala later identified as defendant approached them, on foot, upon the road and held a .22 pistol on them as he ordered them to get in the pickup and drive up the road. Defendant was in the back of the pickup with the pistol trained on them. After they had traversed about four miles of the remote road, they were ordered to stop and get out. Defendant conducted them, still pointing the pistol, up the road, and then up a side skid road into the forest for about half a mile. At that point Rikala shouted to his companion to run and Rikala took off running. Rikala testified that he heard five or six shots and that he heard two of the bullets pass close to his head. He apparently did not further see Smith. After traversing several miles through brush and forest Rikala came to a house, the occupant of which took him to a store where he made a phone call which went indirectly to the police. Two police came and took him back to the location. They found two empty .22 caliber shell casings at the scene where Rikala said the shooting occurred and they searched the area for Smith but did not find him. While the police and Rikala were searching for Smith in the general vicinity, at about 7:15 p.m. (the shooting occurred at about 1:00 p.m.) they saw a vehicle come onto the road which they were traversing. The officer driving the police vehicle stopped the other car with his overhead light. The defendant was driving the other vehicle. He got out. The testimony indicated that at that point the police officer was seeking information from local available residents about whether they had seen or heard any of the incidents of the day. He had just finished knocking on the door of an unoccupied house where he was seeking similar information.

However, when the defendant stepped from the other vehicle Rikala, who was in the police car, said, " 'that's him.' " The police officer said, " 'are you sure?' " and Rikala again said, " 'that's him.' * * * 'he has different clothes on, but that's him.' " The upshot was that the police officer made a radio call to his sergeant, who was also searching in the same area, followed by the defendant's arrest. The defendant's automobile was towed to a garage which was across the line in Lane County.

Smith was still missing on April 26 when two bloodhounds were brought in and given scents, one from defendant's clothes and the other from Smith's clothes, and were put upon scent tracks which they picked up at the location of the crime. The hound on Smith's track lost the scent in heavy undergrowth. The one on defendant's scent track pulled steadily upon his leash and led directly to a point 40 yards from defendant's house, which was a substantial distance away, where the tracking was terminated. On April 27 an Explorer Scout search and rescue team found Smith's body in the brush and forest not far from the scene of the crime. An autopsy revealed he had been killed by a .22 bullet which passed almost entirely through his abdomen, damaging a kidney, the liver and an intestine. The bullet was recovered.

On April 25 a police officer and Rikala made affidavits concerning the matters related above. Warrants were issued, based upon the affidavits, by a district court judge in Douglas County. Searches were conducted of defendant's house, his father's house, which was nearby and in which the officer swore he had seen a .22 caliber pistol, and defendant's automobile, which was in Lane County. Various incriminating objects were seized in each of the searches.

The defendant produced extensive alibi evidence, and in his own testimony he denied that he had ever seen Rikala and Smith. He testified that the testimony

[ 75 ]

of Rikala was not true as it involved him. He also testified that several loads of cedar wood had in the recent past been stolen from him.

■ (1) The use of bloodhound tracking evidence has apparently not been the subject of a previous court opinion in Oregon. An Annotation in 18 ALR3d 1221 (1968) deals comprehensively with the subject. Therein it is stated that the substantial majority of jurisdictions have held such evidence admissible, a few have not. It is argued in the minority cases that the evidence is inadmissible because the dog cannot explain how it picks up a scent, the dog's testimony is hearsay, the dog is not infallible and a jury is likely to exaggerate this kind of evidence out of proportion. The state has pointed out that these arguments have been dealt with in *Terrell v. State,* 3 Md App 340, 239 A2d 128 (1968), and all have been rejected. We have examined that opinion and concur therein. We see no need to elaborate upon that reasoning, and we adopt the majority rule.

The evidence supplied by the dogs, if there is a proper foundation laid therefor, has relevance. Here, just as in *State v. Krummacher,* 269 Or 125, 143, 523 P2d 1009 (1974), where the evidence concerned chemical or physical scientific analysis of bullets, the relevancy objection "is a matter that goes to the evidence's convincing power rather than to its admissibility." Here, as in *Krummacher,* the evidence was the subject of much expert testimony on examination and cross-examination and "the jury had an adequate opportunity to give the testimony the weight it merited * * *." 269 Or at 143. In *Krummacher* the court said that it believes "the convincing power of the evidence was not very great, [but] it nevertheless had some probative value and was admissible. Where the evidence has some probative value, we allow the trial judge some latitude in deciding whether the detrimental aspect of the testimony outweighs its probative value * * *." 269 Or at 143-44. At bar the questioned evidence appears to us to have had substantially more probative

value than that which the Supreme Court thought "was not very great" in *Krummacher.* In all of the precedents it is held that for dog tracking evidence to be admissible an adequate foundation must be laid therefor, and there must be other evidence of the defendant's having committed the crime. There was a plethora of the latter at bar.

■ (a) We are satisfied that there was sufficient foundation laid for the evidence concerning the hounds' tracking. In the ALR Annotation, supra, some 40 cases are digested which have passed upon the sufficiency of the foundation laid in those cases. In many of those cases the related facts were not as cogent as those at bar, and the evidence was held properly received. At bar, the officer who was the keeper and handler of the hounds testified that they are registered bloodhounds with the American Kennel Club, that the hounds have not chased animals, that they do not switch from one scent to another, and that they have the ability to follow a scent through an area where there has been a large number of people. The officer testified that the hound which followed defendant's scent had successfully followed a seven-day-old scent and that he can track through heavy rain. There was evidence there had been heavy rain and some snow at night during the time involved. The evidence also showed that it is desirable for the hounds to be given a scent to follow within 48 hours of the time the track is laid. In this case this occurred 45 hours after the track was laid.

■ (2a) This assignment relates to the searches of defendant's and defendant's father's houses. The district court judge who issued the warrant had an affidavit before him which indicated the commission of at least the crime of kidnapping and the fact that a .22 caliber pistol had been used by the suspect. It also indicated the type of clothing which the defendant was reported by Rikala to have been wearing and the fact that when the defendant was apprehended he had on different kinds of clothing. The officer's affidavit related his having seen

a .22 caliber pistol in defendant's father's nearby home. From these facts we conclude that it was reasonable to issue a warrant to look into the homes for the type of clothing he had been wearing and the gun or ammunition used for the gun. *State v. Skinner,* 5 Or App 259, 483 P2d 87, Sup Ct *review denied* (1971), *cert denied* 406 US 973 (1972).

■ (b) Defendant contends that the police had no reasonable suspicion that he had committed a crime at the time his car was stopped and that therefore any evidence recovered as a result of that stop should have been suppressed. The defendant was not stopped because the police suspected the driver of that particular automobile of any crime but because the police were looking for Smith and were trying to find out what had happened in that generally remote and forested area. When they did stop the car, defendant got out and Rikala, who had related a very believable story of having a crime committed against him, saw in defendant the man whom he believed to be the one who had committed the crime. We said in *State v. Evans,* 16 Or App 189, 194, 517 P2d 1225, Sup Ct *review denied* (1974):

> "The police have no less right than any other person to approach another and make inquiry regarding circumstances of interest * * *."

At the time of the stop, defendant's freedom of movement was not being restricted. That occurred only after he was recognized.

■ (c) Defendant contends that because his vehicle was towed across the county line the efficacy of the search warrant with reference to the vehicle was voided. The procedure for issuing search warrants and for serving them is statutory. ORS ch 133. Defendant contends that ORS 46.030 setting forth the territorial limits of the district court is controlling. That statute states that the district court's jurisdiction is coextensive with the boundary of the county except in civil cases where the jurisdiction shall be the same as that

of the circuit court. This statute does not expressly forbid a district court from issuing a search warrant which may be executed in another county. We find no statute which clearly indicates that the district court's search warrants may or may not be executed outside the county of the court's seat.

Where the legislature has overlooked a matter of this general nature, it has been held the court will do what it is apparent the legislature would have done if it had perceived the problem. *State v. Welch,* 264 Or 388, 394, 505 P2d 910 (1973). We have two guides in that regard: (1) The district judge is a state judge, and it is logical that one state judge should have jurisdiction to issue any related search processes to be executed in the state in a given case pending in his county. (2) In 1975, the legislature enacted ORS 46.063, subsection (1) of which provides:

> "In any case where there is a dispute as to whether jurisdiction is in district court or some other court, the court before which the matter is pending shall refer the question to the Court of Appeals which shall decide the question of jurisdiction in a summary manner. The decision of the Court of Appeals on a question of jurisdiction shall be final."

Thus, regardless of whether the legislature, or a higher court, were to decide a jurisdictional question like that presented, the answer should be based upon what is logical. Either solution leads us to hold that the warrant was properly executed as to the vehicle in Lane County.

Affirmed.