JOSEPH W. PEPIN ET AL. *v.* CITY OF DANBURY ET AL.

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and BARBER, Js.

Argued April 6—decision released May 11, 1976

*Richard L. Nahley,* with whom was *Ronald M. Sullivan,* for the appellants (defendants).

*Lloyd Cutsumpas,* with whom was *Francis J. Collins,* for the appellees (plaintiffs).

COTTER, J. The plaintiffs, Danbury residents and taxpayers, brought this action against the city and certain of its officials seeking a declaratory judgment determining the validity of the tax formula

provision contained in article V, § 4, of the consolidation ordinance of the city of Danbury, and the levy of real estate taxes pursuant thereto, and, in addition, for appropriate equitable relief.

The case was heard on a stipulation of facts which disclosed the following: Prior to January 1, 1965, the city of Danbury consisted of two municipal entities known as the town of Danbury and the city of Danbury. The town was formed by the Court of General Session in 1687 and operated under a board of selectmen and a town meeting form of government; the city was specially chartered by the General Assembly in 1889 and was located within the territorial limits of the town of Danbury.

Effective January 1, 1965, the town and city were consolidated and became the city of Danbury, in accordance with the Home Rule Act, chapter 99, §§ 7-195 through 7-199 of the General Statutes, and under the provisions of a consolidation ordinance adopted at a referendum on September 24, 1963.

The consolidation ordinance establishes three tax districts. All property in the city is included in the Basic Tax District, and under the tax formula challenged here, 85 percent of local tax revenue is collected from the basic district. Urban Tax District No. 1 includes properties connected to either city water or city sewer facilities, and, in addition to liability for the basic tax, these properties are further taxed to raise a sum equal to 7½ percent of the total city revenue. Those properties connected to both city water and city sewer facilities are included in Urban Tax District No. 2 and, in addition to the two taxes already mentioned, are liable for an additional 7½ percent of the city's total revenues. See article V, §§ 1-4, of the consolidation ordinance of the city of Danbury.

Section 4 of article V of the consolidation ordinance, in addition to setting forth the 85–7½–7½ tax formula, further provides that: "If at any time a majority of all the members of the Common Council shall determine that the proportions of the foregoing tax formula are not equitable in the light of changed circumstances, they may alter the ratio of the apportionment so as to do equity; but no such alteration shall be made until the lapse of four (4) years from the effective date of the Consolidation Ordinance."[1]

The plaintiffs are residents and taxpayers of Urban Tax District No. 2 and challenge the 85–7½–7½ tax formula as being illegal and invalid not only under the consolidation ordinance but on statutory and constitutional grounds as well. In addition to a declaratory judgment to that effect, they also sought to enjoin the defendants from levying taxes pursuant to an April 18, 1974 ordinance of the Danbury common council, which established the property tax mill rate under the tax formula here in issue for the fiscal year beginning July 1, 1974. The essence of their claim is that the 85–7½–7½ tax formula is arbitrary, unfair and bears no rational relation to the cost of municipal services rendered, because the average cost of sewers since 1965 is only 2.13 percent of the city budget and because the cost of furnishing public water is covered by service charges paid by the user.

[1] On May 11, 1972, the common council sought to do equity in accordance with this part of section 4 by revising the tax formula to a 92–4–4 ratio. However, this revision was defeated at a July 6, 1972 referendum by a 4760 to 2900 vote. The plaintiffs also stated at trial, although the stipulation of facts is silent on this point, that the common council adopted an 87–6½–6½ tax formula on May 12, 1971, but that this revision was also turned down at a referendum.

Under the mill rate in effect for the fiscal year beginning July 1, 1974, properties connected to one service are assessed at a rate 16 percent higher than those properties not so served. Those taxpayers with both services find their property assessed at a mill rate 40 percent higher than those taxpayers with neither service.[2] Also, in assessing a property's fair market value, consideration is given to whether water and sewer connections are available to the property.

The trial court rendered judgment for the plaintiffs and declared that (1) the tax formula levied with respect to Urban Tax Districts Nos. 1 and 2 was not authorized by law; (2) the tax district established for real property connected to city water was not authorized under the facts of the case; and (3) the tax district established for the purpose of paying for the cost of public sewer service was authorized but that the city had no authority to tax sums in excess of the cost of furnishing such service. From this judgment, the defendants appealed to this court.

# I

At the outset we consider the effect on this case of our decision in *Pelc* v. *Danbury,* 166 Conn. 364, 349 A.2d 825, which was an action brought on behalf of Urban Tax District No. 2 taxpayers challenging the 85-7½-7½ tax formula levied on the List of October 1, 1971. In *Pelc,* the court (*Testo, J.*), after a trial, rendered judgment for the defendants with-

---

[2] The mill rate for the fiscal year beginning July 1, 1974, established pursuant to an ordinance adopted by the common council on April 18, 1974, is as follows:

| | |
|---|---|
| Basic Tax Rate | 51.92 mills |
| Urban Tax District No. 1 | 60.32 mills |
| Urban Tax District No. 2 | 72.51 mills |

out declaring the respective rights of the parties. On appeal, this court declined to review the case on the merits because the plaintiffs-appellants failed to request a finding, which was essential to a final determination of the substantive issues. Id., 368.

In the instant case, the defendants moved for summary judgment, arguing that *Pelc* barred this suit on the ground of res judicata, but their motion was denied (*Mignone, J.*). This case was then heard on a record of stipulated facts, and the trial court (*Berdon, J.*) again rejected the res judicata defense and proceeded to render judgment for the plaintiffs, declaring that the tax formula was not authorized by law. From this judgment, the defendants have appealed.

Since we deal here with tax assessments for different tax years, we are not directly concerned with res judicata but instead with that branch of the doctrine known as collateral estoppel. *Connecticut Light & Power Co.* v. *Tax Commissioner,* 169 Conn. 58, 61, 362 A.2d 958; *Commissioner of Internal Revenue* v. *Sunnen,* 333 U.S. 591, 598, 68 S. Ct. 715, 92 L. Ed. 898; see also annot., 162 A.L.R. 1204, supplementing annot., 150 A.L.R. 5. The doctrine of collateral estoppel may be applied in determining the effect of a valid final judgment on subsequent litigation involving some of the issues determined in the former action between the parties, and the plaintiffs in the second action will be estopped from relitigation "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict [in the first suit] was rendered." *Connecticut Light & Power Co.* v. *Tax Commissioner,* supra, 62, citing *Brockett* v. *Jensen,* 154 Conn. 328, 338, 225 A.2d 190; see *Partmar Cor-*

*poration* v. *Paramount Pictures Theatres Corporation,* 347 U.S. 89, 90, 74 S. Ct. 414, 98 L. Ed. 532; *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 317, 307 A.2d 155, cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699; *Waterbury Savings Bank* v. *Danaher,* 128 Conn. 78, 92, 20 A.2d 455.

The judgment in *Pelc* did not declare the rights of the parties, but merely entered judgment for the defendants and thus was "tantamount to a finding that the plaintiffs had failed to establish a right to a declaratory judgment." *Pelc* v. *Danbury,* supra, 368, and cases cited. While such a judgment may be appropriate when a plaintiff has failed to meet the requirements of §§ 309–313 of the Practice Book, "a proper judgment responsive to the pleadings, issues and prayers for relief should have answered such questions as were answerable whether the answers were favorable to the plaintiffs or to the defendants." *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 375, 260 A.2d 596; see *United National Indemnity Co.* v. *Zullo,* 143 Conn. 124, 131, 120 A.2d 73.

Applying these principles to the instant case, it should be noted that "it is the judgment of the tribunal from which an appeal is taken which, if affirmed by us or rendered in conformity to a decision we make, conclusively determines any such issues." *Osterlund* v. *State,* 135 Conn. 498, 502, 66 A.2d 363. Thus, the judgment of the trial court and our decision in *Pelc* are not finally dispositive of the factual and legal issues presented for resolution in the instant case. Even though the trial court's judgment in *Pelc* fails to declare the rights of the parties, we are urged by the defendants to deny any relief to the plaintiffs on the basis of the trial court's

memorandum of decision in *Pelc*. This we cannot do, since a memorandum of decision cannot constitute a finding of facts; *Martin* v. *Connecticut Personnel Commissioner*, 167 Conn. 377, 355 A.2d 256; *Pelc* v. *Danbury*, supra, 367; nor can it "be considered a record judgment. 'The judgment-file is the only formal written statement which expresses the decision rendered.' " *Harris* v. *First National Bank & Trust Co.*, 139 Conn. 749, 752, 97 A.2d 260. See *Lusas* v. *St. Patrick's Catholic Church Corporation*, 125 Conn. 206, 208, 4 A.2d 333; *Wagner* v. *Zoning Board of Appeals*, 153 Conn. 713, 714, 216 A.2d 182.

"[W]here in a proceeding concerning a tax for a particular period a judgment is rendered which determines that the taxpayer or his property is taxable or is exempt from taxation, but is not supported by a finding or findings specifying the grounds or facts upon which the conclusion is reached, such a judgment has been held not to settle conclusively the question that the taxpayer or his property is taxable, or exempt from taxation, for a different period not involved in the former proceeding." Annot., 150 A.L.R. 63; 162 A.L.R. 1204, 1214, § IV (d) (2).

As we noted in *Pelc,* it was "particularly unfortunate" that we could not decide the merits of the appeal since "the questions in issue in this litigation are of constitutional dimensions, are obviously of material concern to the taxpayers of Danbury and ought to be finally determined." *Pelc* v. *Danbury,* supra, 366.

In view of all these factors, then, as well as the public policy issues raised; *Larke* v. *Morrissey,* 155 Conn. 163, 169, 230 A.2d 562; the history of this

litigation, and the long-standing nature of this controversy,[3] it appears that resolution of the case on the merits by this court is appropriate at this time. It was in view of the existence of these circumstances that this court, acting pursuant to § 762 of the Practice Book, granted the joint motion of the parties for an expedited appeal. "The principle of finality is essential; but not more essential than the principle of justice. A final settlement is not more vital than a right settlement." *State* v. *Langley,* 156 Conn. 598, 601, 244 A.2d 366. See *State* v. *Lee,* 65 Conn. 265, 271, 30 A. 1110.

## II

### A

In Connecticut, the power to levy taxes is vested in the General Assembly. *Kellems* v. *Brown,* 163 Conn. 478, 487, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678; *Beach* v. *Bradstreet,* 85 Conn. 344, 348, 82 A. 1030. In exercising this power, the legislature is given broad discretion, subject only to the constitutional requirements of due process and equal protection. *Lublin* v. *Brown,* 168 Conn. 212, 220, 362 A.2d 769; *State* v. *Murphy,* 90 Conn. 662, 666, 98 A. 343; *Madden* v. *Kentucky,* 309 U.S. 83, 87–88, 60 S. Ct. 406, 84 L. Ed. 590; *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989.

Included within the General Assembly's discretion is the power to authorize municipalities to collect taxes, for example, by granting them a charter.

---

[3] It should be noted that this case is the fourth appeal to come before this court as a result of Danbury's 1965 consolidation and the tax formula adopted thereunder. See *Pelc* v. *Danbury,* 166 Conn. 364, 349 A.2d 825; *Rothkopf* v. *Danbury,* 156 Conn. 347, 242 A.2d 771; *Wenzel* v. *Danbury,* 152 Conn. 675, 211 A.2d 683.

*State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 198–99, 132 A. 561. A municipality, as a creation of the state, has no inherent power of its own, id., 198, nor does it have any powers of taxation except those expressly granted to it by the legislature. For these reasons, a municipality's "powers of taxation can be lawfully exercised only in strict conformity to the terms by which they were given"; *Low Stamford Corporation* v. *Stamford,* 164 Conn. 178, 182, 319 A.2d 369; *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 36, 238 A.2d 410; and "statutes conferring authority to tax must be strictly observed." *E. Ingraham Co.* v. *Bristol,* 144 Conn. 374, 378, 132 A.2d 563; *Thames Mfg. Co.* v. *Lathrop,* 7 Conn. 550, 556; see 14 McQuillin, Municipal Corporations (3d Ed.) § 38.06. Further, any doubt as to a municipality's power to tax should be resolved against the existence of the power and in favor of the taxpayer. *Low Stamford Corporation* v. *Stamford,* supra, 182; *Security Mills, Inc.* v. *Norwich,* 145 Conn. 375, 377, 143 A.2d 451; 14 McQuillin, op. cit. § 38.07.

## B

We must determine whether the 85–7½–7½ tax formula fell within the statutory authorization granted to the city by the Home Rule Act,[4] which provides for the consolidation of political subdivisions such as the former city and town of Danbury, General Statutes § 7-195, and requires that a consolidation commission be formed to prepare a consolidation ordinance, which is effective if adopted at a referendum. General Statutes §§ 7-197 through 7-199. In the consolidation ordinance, "provision shall be made for the allocation of local

---

[4] Chapter 99 of the General Statutes, §§ 7-187 through 7-201.

governmental functions and services . . . ; the definition of areas in which services are to be rendered; the establishment of necessary taxing districts to pay the cost of such services . . . ." General Statutes § 7-198.

The tax formula challenged here was established by the Danbury consolidation ordinance which was drafted pursuant to General Statutes § 7-198. Thus, while the city could properly establish special tax districts, it was acting in excess of its statutory authority when it charged residents of those districts an amount in excess of "the cost of such services." General Statutes § 7-198. The meaning of the word "cost" is plain and unambiguous. "It can comprehend, in its largest extent, only disbursements reasonably made and actually required." *Ahmed's Case,* 278 Mass. 180, 185, 179 N.E. 684. Differently put, it is that amount actually "expended in performing a particular act or operation." Black's Law Dictionary (4th Ed.) 415; see also *Emmco Ins. Co.* v. *Howell,* 275 Ala. 270, 273, 154 So. 2d 28. A charge to a user which exceeds the cost of acquiring, constructing and operating such a system is not permitted under General Statutes § 7-198, and thus the trial court was correct in declaring that the tax formula levied on Urban Tax Districts Nos. 1 and 2 was not authorized according to law.

Our conclusion is fortified by a comparison of the statutes which set forth in detail the specific manner in which the costs of municipal water and sewer facilities may be assessed if a consolidated municipality does not establish a special taxing district, but vests this power in a municipal authority such as the common council.

Under chapter 102 of the General Statutes, which deals with waterworks, "[a]ny town, city or borough or district . . . may acquire, construct and operate a municipal water supply system," General Statutes § 7-234, and establish rates which shall be "just and equitable," and shall be "sufficient in each year for the payment of the expense of operation, repair, replacements and maintenance of such system and for the payment of the sums herein required to be paid into the sinking fund." General Statutes § 7-239.

Under chapter 103 of the General Statutes, charges with respect to sewer service are also strictly regulated. For example, General Statutes § 7-249 requires that assessments to pay for the acquisition and construction of sewers "shall not exceed the special benefit accruing to the property" and that "[n]o assessment shall be made against any property in excess of the special benefit to accrue to such property." Charges for operation of the sewers shall be "fair and reasonable" and established in accordance with six specific criteria. General Statutes § 7-255; see also General Statutes § 7-267.

The trial court was correct in concluding that the tax formula was invalid and not authorized by statute. It would violate the statutory scheme if a municipality could charge excessive sewer and water rates by establishing a special tax district under General Statutes § 7-198 while it could not do so if it established a municipal sewer or water authority with appropriate powers under chapters 102 and 103 of the General Statutes. The stipulation of facts clearly indicates that the city's "Water

Department is self-sustaining according to Statute. Water rent charges in varying amounts are made to users connected to the system which defray the operating and other costs of the system." Despite this fact, the city still charges water users with a surcharge sufficient to raise 7½ percent of its total revenues. Similarly, with respect to the sewer system, the city taxes properties with this facility at a rate which is three time higher than the average annual cost of maintaining the system. Plainly, this method of assessment is hardly fair, valid or authorized by the language of General Statutes § 7-198, because under that statute, a taxpayer cannot be charged for more than he is actually receiving. See *Los Angeles* v. *Offner,* 55 Cal. 2d 103, 358 P.2d 926; cf. *Waukegan* v. *DeWolf,* 258 Ill. 374, 101 N.E. 532; see also 14 McQuillin, op. cit. § 38.24; 70 Am. Jur. 2d, Special or Local Assessments, § 25.

For these reasons, we agree with the judgment of the trial court that the tax formula is not authorized according to law. We are unpersuaded by the city's argument that the tax formula is authorized by §§ 12-64 and 12-71 of the General Statutes. Sections 12-64 and 12-71 are statutes which authorize the levying of taxes in accordance with the true and actual valuation of real and personal property and cannot be construed as permitting what General Statutes § 7-198 expressly forbids. Each of these statutes has a reasonable field of operation which does not impinge on the domain of the other; *Busko* v. *DeFilippo,* 162 Conn. 462, 471, 294 A.2d 510; and they can be easily read so as to make one consistent body of law. *State* v. *White,* 169 Conn. 223, 234, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399; *Cicala* v. *Administrator,* 161 Conn. 362, 365, 288 A.2d 66.

Nor can we find merit with the claim that General Statutes § 7-194 (52) imparts to the city a broad power to regulate the manner in which taxes are assessed and collected. Section 7-194 is an enumeration of fifty-nine powers granted to towns, cities or boroughs which adopt a charter under the Home Rule Act. Subsection 52 establishes the power "to assess, levy and collect taxes for general or special purposes on all property, subjects or objects which may be lawfully taxed and to regulate the mode of assessment and collection of taxes and assessments not otherwise provided for." The meaning of the statute is clear on its face: A city may tax that property which is lawful for it to tax and may regulate methods of collecting taxes not otherwise provided for. The statute does no more than mandate what the city has the power to do and nowhere authorizes imposition of a tax which would be invalid under another statute, as § 7-194 recognizes when it states that the powers enumerated are subject to the provisions of General Statutes § 7-192, which states in pertinent part that: "Nothing contained in this chapter shall empower any town, city or borough to levy or collect any tax not authorized by the general statutes."

Nor are we persuaded by the city's argument that it has the same broad and virtually unfettered discretion to establish a tax district which the General Assembly possesses. This argument is belied by the fact that a municipality cannot levy taxes in excess of its statutory grant of authority from the legislature, part II A, supra, and General Statutes § 7-198 merely authorizes the establishment of tax districts to pay the cost of municipal services. "Not every tax which may be levied by statute in favor of the State may also be levied by ordinance in favor of a

municipality. . . . The State possesses the inherent power to tax but a municipality may exercise the taxing power only to that extent to which such power has been specifically granted by the legislature." *Miami* v. *Kayfetz,* 158 Fla. 758, 764, 30 So. 2d 521; see *E. Ingraham Co.* v. *Bristol,* supra; *Mastrangelo* v. *Buckley,* 433 Pa. 352, 363, 250 A.2d 447; 14 McQuillin, op. cit. §§ 38.47, 38.54; 16 McQuillin, op. cit. § 44.13.

In view of our disposition of this case on statutory grounds, we need not consider the plaintiffs' constitutional claims that the tax formula violates their equal protection and due process rights. See *Ashwander* v. *Tennessee Valley Authority,* 297 U.S. 288, 346–47, 56 S. Ct. 466, 483, 80 L. Ed. 688 (opinion of Brandeis, J., concurring).

The trial court was correct in concluding that the tax formula levied with respect to Urban Tax District No. 1 and Urban Tax District No. 2 is not authorized according to law; that the establishment of a taxing district by the city of Danbury for real property connected to public water is not authorized under the facts of this case; and that a tax district for the purpose of paying for the cost of public sewer service is authorized, but the city of Danbury has no authority to tax sums in excess of the cost of furnishing such service.

There is no error.

In this opinion the other judges concurred.