STATE OF CONNECTICUT *v.* JOSEPH WILSON

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued February 15—decision released May 6, 1980

*Martin B. Burke,* special public defender, for the appellant (defendant).

*Robert E. Beach, Jr.,* assistant state's attorney, for the appellee (state).

COTTER, C. J. The defendant, Joseph Wilson, was charged in a three count information with assault

in the first degree in violation of General Statutes § 53a-59 (a) (1), attempted burglary in the first degree in violation of General Statutes §§ 53a-49 and 53a-101 (a) (1), and conspiracy to commit burglary in the first degree in violation of General Statutes §§ 53a-48 and 53a-101 (a) (1). He pleaded not guilty and elected to be tried to a jury of six. The jury found him guilty of assault in the first degree, guilty of conspiracy to commit burglary in the first degree, but not guilty of attempted burglary in the first degree. He has appealed from the judgment rendered on the jury's verdict.

Prior to the trial, the defendant moved to suppress certain items seized from him at the time of his arrest. He also moved to dismiss the information based on the claim of an unlawful and unconstitutional arrest. After a hearing, the court denied the motions. The first of the two claims the defendant raises on appeal is that the trial court erred in denying his motions to suppress and dismiss on the ground that there was insufficient justification for his arrest and consequent search. His second claim is that the trial court erred in admitting testimony concerning the tracking of the defendant by a bloodhound.

A summary of the evidence presented at the trial serves to place the claims of error in proper perspective. From the evidence offered the jury could reasonably have found: On the evening of November 24, 1976, at approximately 9:30 p.m., the victim and his wife returned to their home in Windsor. Shortly thereafter, they heard a noise outside the house and saw someone run past one of their windows. The victim went out to investigate the intrusion while his wife telephoned the police.

The victim followed the noise of people running through the brush through several backyards and then located and confronted two men, at a cul-de-sac near his home. One was noticeably taller than the other. As the victim, from a distance of twenty to twenty-five feet, questioned the men concerning their purpose in the neighborhood, he was shot in the chest by the taller of the two men. The two men fled the scene of the assault on foot.

Meanwhile, policemen arrived three to four minutes after the victim's wife telephoned them. The first policeman to arrive saw the victim lying on the side of the road. At the hospital to which the victim was taken, he described his assailants as two black males, one taller than the other.

A trooper named Johnston also responded to the call. On the evening of November 24, 1976, he was investigating a series of armed robberies which had been committed in the towns surrounding Hartford. Trooper Johnston was directed by radio to go to the hospital where the victim had been admitted; he interviewed him at about 10:40 p.m. and obtained a description which matched that of the suspects he was seeking in connection with the armed burglaries under investigation. Johnston and another trooper then went to the scene of the shooting, reported the description the victim gave of his assailants, and, after receiving information from the policemen at the scene, drove in a southerly direction to route I-91.

As Trooper Johnston and his fellow officer proceeded south on route I-91 shortly after midnight, they spied two people walking on the shoulder of the highway on a bridge which crosses the Farmington River. As the troopers passed the men, they

noticed that they matched the description of the suspected assailants of the victim and perpetrators of the armed robberies. The troopers stopped their vehicle and, as the two men approached them, the troopers observed that the two men were wearing dark clothing, were sweating although the temperature was about 32 degrees Fahrenheit on this November night, were breathing heavily, and had burrs and twigs covering their pants. While training a shotgun on the two men, the police officers searched them and initially discovered a flashlight and a pair of wire cutters. A more thorough search disclosed ski masks and a pair of gloves. The taller of the two men was the defendant Wilson, and the other was Ronald Menefee.

State Trooper Redmann, who was a bloodhound trainer, arrived at the scene of the crime with Clem, a bloodhound, at about 1 a.m.; Redmann put Clem's nose in a fresh footprint which was found where the shooting took place; the bloodhound followed the scent from the footprint 2.1 miles to the point where the arrest was made.

At trial Ronald Menefee testified that he and the defendant Wilson were in the Windsor area to rob houses on the night of November 24, 1976; they had with them for that purpose a rifle, a pistol, a flashlight, wirecutters to cut telephone wires, ski masks, and gloves. Menefee described how he and Wilson had assessed the potential of the victim's house for a robbery, the shooting of the victim, and the route by which he and Wilson fled from the shooting to the bridge on route I-91 crossing the Farmington River. Menefee also testified that the next morning he led the police along a 2.1 mile route from the victim's house to the place at which he and Wilson were arrested and searched.

I

In an opinion this court rendered on July 17, 1979, *State* v. *Wilson,* 178 Conn. 427, 435, 423 A.2d 72, (hereinafter *Wilson I*), we were confronted with the same claim the defendant is making on this appeal—namely, that his arrest and consequent search during the night of November 24, 1976, were illegal. In *Wilson I,* the defendant was appealing from a verdict and judgment of guilty of robbery in the first degree in connection with an armed robbery which took place in Somers in a private home on November 11, 1976. The arrest and search that were at issue in *Wilson I* are identical to the ones in question on this appeal. In *Wilson I* we concluded that the facts and circumstances surrounding the arrest of the defendant on the night of November 24, 1976, provided probable cause for the arrest and that, therefore, the arrest and the search incidental to it were lawful and within the strictures of General Statutes § 6-49. *Wilson I,* supra, 435.

The defendant conceded at oral argument that the principles of collateral estoppel would normally be determinative of his claim of error on this appeal concerning the legality of his arrest and search incident to it on the night of November 24, 1976. Collateral estoppel is that aspect of the doctrine of res judicata which serves to estop the relitigation by parties and their privies of any right, fact or legal matter which is put in issue and has been once determined by a valid and final judgment of a court of competent jurisdiction. E.g., *Partmar Corporation* v. *Paramount Pictures Theatres Corporation,* 349 U.S. 89, 90, 74 S. Ct. 414, 98 L. Ed. 532; *Slattery* v. *Maykut,* 176 Conn. 147, 156–57, 405 A.2d 76; *Pepin*

v. *Danbury,* 171 Conn. 74, 79–80, 368 A.2d 88; *Connecticut Light & Power Co.* v. *Tax Commissioner,* 169 Conn. 58, 61–62, 362 A.2d 958; 46 Am. Jur. 2d., Judgments § 394; Restatement, Judgments §§ 68-70. It is well settled that the principles of collateral estoppel apply to criminal as well as to civil cases. E.g., *Ashe* v. *Swenson,* 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469; *Hoag* v. *New Jersey,* 356 U.S. 464, 470–71, 78 S. Ct. 829, 2 L. Ed. 2d 913, reh. denied, 357 U.S. 933, 78 S. Ct. 1366, 2 L. Ed. 2d 1375; *State* v. *Camera,* 132 Conn. 247, 249, 43 A.2d 664. See also *State* v. *Moeller,* 178 Conn. 67, 74–75 n.6, 420 A.2d 1153. See generally, annot., Modern Status of Doctrine of Res Judicata in Criminal Cases, 9 A.L.R.3d 203. The defendant sought to avoid the effect of collateral estoppel by arguing that there were significant discrepancies between the trial court's finding on the motion to suppress in the present case and the trial court's finding in *Wilson I.*

The thrust of the defendant's contentions at oral argument was that the alleged discrepancies in the findings between *Wilson I* and the present case were sufficient to compel this court to examine the issue of whether the arrest and consequent search of the defendant were legal in light of the findings in the present case. We do not agree, however, that this court need, as a preliminary matter, address the question of whether, in fact, there are significant discrepancies between the findings of the two trial courts. Nor, consequently, need we determine the extent to which, if any, this court is confined to the trial court's finding of facts in the present case in

determining whether its denial of the defendant's motion to suppress was correct.[1] See Maltbie, Conn. App. Proc. § 131.

It would be a violation of the fundamental principles and purposes of collateral estoppel for this court to reexamine the identical factual situation to redetermine a matter of law that has already once been fully litigated by the same parties and finally decided. See *Gaitan* v. *United States,* 295 F.2d 277 (10th Cir.), cert. denied, 369 U.S. 857, 82 S. Ct. 939, 8 L. Ed. 2d 15; 46 Am. Jur. 2d, Judgments §§ 394-95, 397. See also Restatement, Judgments § 70. " '[I]t is the judgment of the tribunal from which an appeal is taken which, if affirmed by us or rendered in conformity to a decision we make, conclusively determines any such issues.' *Osterlund* v. *State,* 135 Conn. 498, 502, 66 A.2d 363." *Pepin* v. *Danbury,* supra, 80.

## II

The defendant's only other claim of error involves a challenge to the testimony of state Trooper Andrew Redmann, a bloodhound handler, who testified that a bloodhound named Clem sniffed a footprint at the site of the shooting of the victim in the present case and then followed a route through the woods to reach the Farmington River bridge on route I-91, the scene of the defendant's arrest. The defendant attacks the admissibility of Redmann's testimony on the grounds that the state failed to lay

---

[1] Findings in jury cases were, as of October 1, 1974, not required. Practice Book, 1978, § 629A.

In the hearing on the motion to suppress in both *State* v. *Wilson,* 178 Conn. 427, 423 A.2d 72, and the present case, the principal witness was Trooper Johnston, the arresting officer. Furthermore, the defendant's arguments in his brief in this appeal concerning the issue of probable cause at the time of his arrest were identical to the arguments he presented on appeal in *State* v. *Wilson,* supra.

a sufficient foundation both as to the qualifications of Clem and his handler, Trooper Redmann, and as to the scientific basis for Trooper Redmann's opinion, and claims that the prejudicial tendency of the witness' testimony outweighed its probative value.

In an extensive offer of proof outside the jury's presence, Trooper Redmann testified as to the ability of bloodhounds to track human scents and the actual tracking by Clem in the present case. He also testified that he had trained bloodhounds since 1973 and had taken at least six courses in the handling of this species of dog. Dogs under his supervision had an approximately 80 percent success rate and he had personally trained Clem, whose rate of success was also about 80 percent.

A neighbor of the victim testified that he had found a footprint at the site of the shooting which had not been there about four and one-half hours before the crime. A Windsor police department detective testified that he had protected the area of the shooting in which the single footprint had been found and that no one interfered with the print until the bloodhound sniffed it.

It is well settled in the vast majority of jurisdictions which have addressed the question that evidence of the tracking by dogs of the scent of a suspected criminal is admissible to prove the identity of the accused in a criminal prosecution, provided that a proper foundation has been laid for the admission of this evidence. E.g., *United States* v. *Bronstein,* 521 F.2d 459, 462–63 (2d Cir.); *United States v. Joyner,* 492 F.2d 650, 651, 653, (D. C. Cir.), cert. denied, 419 U.S. 852, 95 S. Ct. 94, 42 L. Ed. 2d 83; *Cook* v. *State,* 374 A.2d 264, 270 (Del.); *Com-*

*monwealth* v. *LePage,* 352 Mass. 403, 417, 226 N.E.2d 200; *People* v. *Harper,* 43 Mich. App. 500, 507–508, 204 N.W.2d 263; *State* v. *Irick,* 291 N. C. 480, 495–97, 231 S.E.2d 833; *State* v. *Harris,* 25 Or. App. 71, 547 P.2d 1394. See generally, annot., Evidence of Trailing by Dogs in Criminal Cases, 18 A.L.R.3d 1221. Although no uniform test has been reached in the cases addressing the issue of whether a proper foundation was laid for the admission in evidence of tracking by dogs, a Michigan decision states criteria that: safeguard the reliability of tracking-dog evidence; determine satisfactorily whether a sufficient foundation has been laid; and would, from a review of cases in other jurisdictions, be at least as stringent as those prevailing in the vast majority, if not all, of the other jurisdictions. The court in *People* v. *Harper,* supra, 508, asserted that it must be shown as a condition precedent to the admissibility of tracking-dog evidence that: "(1) the handler was qualified to use the dog; (2) the dog was trained and accurate in tracking humans; (3) the dog was placed on the trail where circumstances indicate the alleged guilty party to have been; and, (4) the trail had not become so stale or contaminated as to be beyond the dog's competency to follow it." For other decisions which apply similar criteria in holding the foundation for tracking-dog evidence to be sufficient, see, e.g., *Terrell* v. *State,* 3 Md. App. 340, 239 A.2d 128; *People* v. *Centolella,* 61 Misc. 2d 726, 305 N.Y.S.2d 460; *State* v. *Rowland,* 263 N.C. 353, 139 S.E.2d 661; *State* v. *Harris,* supra. See generally, annot., op. cit., 18 A.L.R.3d 1221, § 5b.

It has been oft iterated by this court that the qualification of an expert witness is within the discretion of the trial court and its decision will not

be disturbed on appeal unless that discretion is abused or the error is clear and involves a misconception of the law. *State* v. *Castagna,* 170 Conn. 80, 90, 364 A.2d 200; *State* v. *Williams,* 169 Conn. 322, 363 A.2d 72; *State* v. *Lally,* 167 Conn. 601, 609, 356 A.2d 897, cert. denied, 423, U.S. 829, 96 S. Ct. 48, 46 L. Ed. 2d 46. See also 31 Am. Jur. 2d, Expert and Opinion Evidence § 31. In light of the foregoing discussion of decisions in other jurisdictions concerning admission of tracking-dog evidence and the state's offer of proof as to the qualifications of Trooper Redmann and Clem, the circumstances surrounding the finding and protecting of the footprint, and the time the tracking took place, we cannot say that the trial court abused its discretion or misconceived the law in admitting the testimony of Trooper Redmann concerning Clem's tracking activities on the night of November 24, 1976.

Similarly, the defendant's argument that the prejudicial tendency of Trooper Redmann's testimony outweighs its probative value and thus should have been excluded on the grounds of relevancy is unconvincing. It is clear that the testimony was probative of the issue of the defendant's identity. His contention that the testimony was prejudicial because it lent credibility and weight to Menefee's testimony that the defendant shot the victim and fled by a certain path confuses what may be prejudicial with what is merely damaging to his case. Evidence that may be prejudicial is that which may unduly arouse the jury's emotions of prejudice, hostility or sympathy. *State* v. *Bitting,* 162 Conn. 1, 9–10, 291 A.2d 240; McCormick, Evidence (2d Ed.) § 185. Trooper Redmann's testimony, which corroborated other evidence linking the defendant with the crime in this case, although clearly damaging to

the defendant's cause, cannot be considered prejudicial, particularly in view of the foundation that was laid before its admission. See, e.g., *Terrell* v. *State,* supra, 345, 349; *State* v. *Harris,* supra. The trial court did not abuse its discretion in admitting that testimony over any objection on the grounds of relevancy.

There is no error.

In this opinion the other judges concurred.