# STATE OF OREGON,
*Respondent,*

*v.*

# GLORIA VILLAGRAN,
*Appellant.*

## (No. J80-0671, CA A20520)

641 P2d 1152

Jeffrey Pugh, Roseburg, argued the cause for appellant. With him on the brief was Neuner, Dole, Caley & Kolberg, Roseburg.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

GILLETTE, J.

Richardson, J., dissenting.

## GILLETTE, J.

Defendant appeals her conviction for possession of a controlled substance, ORS 475.992, and assigns as error the denial of her motion to suppress evidence seized from her premises pursuant to a warrant. She contends that the affidavit in support of the warrant was insufficient to support a finding of probable cause in that neither the credibility of a named informant, Madsen, nor the reliability of his information was established as required by *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969), and *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964). In the alternative, she contends that the affidavit fails to establish probable cause that evidence of criminal activity would be found at the premises searched. We agree with this last contention and reverse.

The warrant authorized a search of the premises located on Cal Henry Road. The affidavit, made by a police officer, states in relevant part:

"That my belief [that defendant possessed a controlled substance] is based on the following facts:

"That this morning I helped serve a search warrant on property located just west of Lookingglass at which time we discovered over a ton of marijuana growing in a [double] barn located on that property. Located on the property was a house and a trailer which I helped search and which were discovered to be vacant with virtually no furniture in either structure. * * * A complete list of property taken from the property adjoining the barns and from the barns is attached hereto as Exhibit 2.

"Item #1 on Exhibit 2 mentions that the 4 cardboard boxes had been sent to 'B&N' Greenhouse Supply, 2575 Whistler's Park Road, Roseburg, Oregon.

"That on September 29, 1979, I met with George Marsh in the Douglas County Assessor's Office and went through his records with him. We determined that the owner of the property above mentioned where the items found in Exhibit 2 is Nora Villagran. I checked Nora Villagran through teletype with the Oregon Motor Vehicles Division and discovered that her last known address is 2575 Whistler's Park Road.

"That on September 29, 1979, I ran checks with the California and Oregon Departments of Motor Vehicles and learned that Norman Lee Waterbury has a current valid

Oregon license with an address of 2575 Whistler's Park Rd., Roseburg, Oregon.

"That on September 29, 1979, George Marsh, who lives near the property searched told me that a person named Ernie Madsen had built the barn wherein a large portion of the items in Exhibit 2 were located. I spoke with Larry Frost of the Sheriff's Office today and he told me that he had spoken with Madsen on September 29, 1979, and was told by Madsen that he had built the barn for a person named Norman Waterbury. Frost also told me that Madsen said the guy he built the barn for was building an "underground" house in Umpqua which is described as being on the driveway adjacent to the driveway for the Cal Henry residence which is located at 1054 Cal Henry Road. Going up the driveway to the "underground" house, to the left of the driveway is a trailer house and a barn behind said trailer. The "underground" residence is located further down the driveway."

Defendant first claims that there is no substantial basis for giving credence to the hearsay information supplied by Madsen. *Spinelli v. United States, supra,* and *Aguilar v. Texas, supra,* establish a "two-pronged" test to be applied in determining the sufficiency of affidavits based upon information supplied by anonymous hearsay informants. That test, as applied by the Oregon Supreme Court in *State v. Montigue,* 288 Or 359, 362, 605 P2d 656 (1980), relates also to named informants and requires that the affidavit set forth (1) the informant's "basis of knowledge"; and (2) facts showing the informant's "veracity," either by showing that the informant is credible or that his information is reliable.

Defendant contends that there is no basis in the affidavit for making the required veracity finding. She argues that simply naming the informant is not sufficient under the rationale of *State v. Montigue, supra,* which she says holds that naming the informant in the affidavit was not sufficient, standing alone, to support a determination that the named informant was truthful. We do not believe the case stands for that bold proposition. In any event, the fact the informant is named is one factor tending to establish veracity. As the court did note in *Montigue,* by revealing the informant's name it is more likely that he will be called as a witness and be exposed to penalties for

perjury if his testimony is contrary to the information given to the affiant. 288 Or at 367. The court also noted that there was nothing in the affidavit to indicate that the named informant was a participant or accomplice in the criminal activity under investigation or other facts appearing on the face of the affidavit reflecting adversely on the reliability of the named informant. 288 Or at 366.

The factors considered by the court in *Montigue* to be sufficient to uphold the warrant are also present here. In addition, part of the information attributed to Madsen was independently corroborated by George Marsh, the county assessor, who told the affiant that Madsen built the barn located on the Lookingglass property. Additionally, the character of the information given by Madsen indicates no design to fabricate. He gave information to a police officer, the accuracy of which could be easily checked by observation and checking of public records. It is unlikely that a person would give false information to a police officer knowing such information could be easily checked. Considering the affidavit as a whole, we conclude that the issuing magistrate was justified in accepting the information attributed to Madsen.

Defendant next argues that there is no fact alleged in the affidavit disclosing the basis of Madsen's knowledge that Waterbury was building an underground house on Cal Henry Road. The affidavit does not state precisely how Madsen learned of the underground house and how he determined it was being built by Waterbury. However, a common sense reading of the affidavit supports a conclusion by the issuing magistrate that the information by Madsen was based on personal observation and knowledge. He described in some detail the location of the underground house and the other structures on the property. This detail supports an inference that he had observed the house and other structures. He likely would not have been able to recite such detail had he learned about the underground house from a secondary source. *See Draper v. United States,* 358 US 307, 79 S Ct 329, 3 L Ed 2d 327 (1959). He also had built a barn for Waterbury on the Lookingglass property, and there is a permissible inference that he learned from that relationship that Waterbury was building a house on Cal Henry Road.

■ ■    Finally, defendant argues that, assuming the informant's statements are reliable, the affidavit does not support a conclusion that evidence of the crime of possession of a controlled substance would be located at the Cal Henry Road property. In particular, she contends the affidavit contains no factual allegations regarding the ownership of the Cal Henry Road property nor any indication why evidence of the marijuana growing operation would be found on Cal Henry Road rather than on Whistler's Park Road, which was determined to be the mailing address of defendant and Waterbury. We agree.

In determining if an affidavit demonstrates that evidence will be found in a particular place, we have utilized the "most promising place" rule. Essentially, that rule is that probable cause to believe that certain evidence is at a particular location is established when it is shown that, under the circumstances, the designated location is the most promising place to look for the evidence. *State v. Skinner,* 5 Or App 259, 483 P2d 87, *rev den* (1971), *cert denied* 406 US 973 (1972); *see also, Porter v. United States,* 335 F2d 602 (9th Cir 1964), *cert denied* 379 US 983 (1965); *State v. Johnson,* 34 Or App 73, 578 P2d 413, *rev den* 283 Or 235 (1978); *State v. Harris,* 25 Or App 71, 547 P2d 1394, *rev den* (1976).

The affidavit in the present case shows that, if there was a "most promising place" to look in this case, it was at the Whistler's Park property. The barn wherein the large quantity of marijuana was found had been built by one person whose current address was on Whistler's Park Road and on property owned by another person who apparently lived on Whistler's Park. Property found in the barn had once been sent to the Whistler's Park Road address. By contrast, there is nothing in this affidavit to suggest that the underground house "being built" off Cal Henry Road is sufficiently far advanced in its construction to shelter anything, much less evidence of the sort sought here. The Cal Henry address was not, at least on the basis of this affidavit, a "promising" place, much less a "most promising" place.

The affidavit in question did not contain probable cause to search the underground house at the Cal Henry

address. Evidence seized in the search of that address pursuant to the warrant should have been suppressed.

Reversed and remanded for new trial.

**RICHARDSON, J.,** dissenting.

The majority strikes down the warrant because the affidavit did not establish probable cause to believe the underground house on Cal Henry Road would contain evidence of the crime of manufacturing a controlled substance. I disagree and therefore dissent.

In reviewing the decision of a magistrate to issue a search warrant, we are guided by well established principles. First, there is a general preference in the law for warranted rather than warrantless searches. As the United States Supreme Court said:

> "* * * Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded warrants. * * *" *United States v. Ventresca*, 380 US 102, 109, 85 S Ct 741, 13 L Ed 2d 684 (1965).

A negative approach by reviewing courts toward warrant application would tend to discourage law enforcement officers from seeking warrants. Second, we should review affidavits for warrants in a common sense, nontechnical manner, with consideration for the practical problems facing an officer in drafting the affidavit. *United States v. Ventresca, supra.* The issuing magistrate is entitled to use not only the credible information in the affidavit but also any reasonable inferences that can be drawn from the four corners of the affidavit. Third, we must be mindful of what the term probable cause means. As we said in *State v. Tidyman,* 30 Or App 537, 541, 568 P2d 666, *rev den* 280 Or 683 (1977):

> "* * * [P]robable cause is not so much a standard of proof as it is a barrier against governmental arbitrariness. The quantum must be such as guides a reasonable person and prevents official whim. * * *"

Thus, we are not reviewing to determine if the state has proven some required fact, but to determine whether a reasonable person could arrive at the conclusion

that the sought for evidence was in the place requested to be searched. In that light, we defined probable cause to search in *State v. Willis,* 24 Or App 409, 412, 545 P2d 1392, *rev den* (1976):

> "In the context of search and seizure, probable cause does not mean more likely than not, it means only a well-warranted suspicion. * * * "

The information in an affidavit need not point to only one inference to the exclusion of all others; that would be akin to a standard of proof in a criminal case. It need not establish that the inference is more likely than not, because that would be a preponderance of the evidence standard.

The majority, while not reciting those principles, apparently would not find them disagreeable. Where the majority and I part company is in the application of those principles to the affidavit in this case.

The majority correctly notes an additional guideline germane to determining whether there is probable cause to believe the evidence will be found in the place searched. This guideline is denominated by the majority as the "most promising place" rule which was apparently coined in *Porter v. United States,* 335 F2d 602 (9th Cir 1964), *cert den* 379 US 983 (1965). In understanding the rationale of this rule it is important to know what the court did and did not say.

In *Porter,* the defendant robbed a bank wearing a particular hat and coat. A short time later he was arrested for a traffic offense while driving an Oldsmobile. He was not wearing the hat and coat described by the bank teller who had been robbed. Federal agents obtained two search warrants to look for the hat and coat: one for a search of the Oldsmobile and another for a search of a Rambler also owned by defendant. Defendant argued that there was no basis in the affidavit to infer that the hat and coat would be in either automobile. He also argued that because the agents sought the same items from two different places that established that there was no probable cause to believe the evidence was in either vehicle.

The court, in upholding the warrant, first noted that the affidavit stated that the bank teller had identified

defendant and described the clothing he wore during the robbery and that the defendant had on different clothing when arrested. The court said:

"* * * It would seem that the most promising place to look for these objects, considering the fact that the suspect was driving an automobile with a foreign license, which he had registered under an assumed name, would be in the automobile. If he had been a person settled in the community, there might well have been more promising places to look for the objects in question. * * *" 335 F2d at 604.

In response to the defendant's argument that the existence of two warrants was inconsistent with the constitutional requirement of particularity, the court said:

"* * * As to the significance of the fact that two warrants were issued, one for the Oldsmobile and the other for the Rambler, surely the fact that a suspect has two automobiles, or two residences, does not mean that neither one of them can be searched, because the suspect may have concealed the wanted evidence in the other one. * * *" 335 F2d at 605.

The rationale of the principle is not that the information in the affidavit must point to the single *most* promising place to the exclusion of all others. That would place an unnnecessary risk on the warrant application process that a reviewing court would strike down the warrant because there was a more promising place for the evidence than that selected by the affiant. The basic rationale is that the affidavit must disclose a basis for reasonably concluding that the place sought to be searched is a promising place to find the evidence. That the issuing magistrate or the reviewing court may decide there was a more promising place to search does not mean there is not probable cause to believe the evidence is in the place the application for the warrant designates.

The Oregon authorities cited by the majority all involve more than one promising place to search for the evidence. In *State v. Skinner,* 5 Or App 259, 483 P2d 87, *rev den* (1971), *cert den* 406 US 973 (1972), the police obtained a warrant to search both defendant's residence and his vehicle for the murder weapon. In *State v. Johnson,* 34 Or App 73, 578 P2d 413, *rev den* 283 Or 235 (1978), the police searched defendant's home, his vehicle and the truck he

drove for his employer. In *State v. Harris,* 25 Or App 71, 547 P2d 1394, *rev den* (1976), the police searched defendant's home and that of his father for clothing defendant wore when the crime was committed. In none of these cases did we discuss or conclude that the police had to select the single most promising place to search.

I believe the majority misconstrues as well as misapplies the principle by focusing on the word "most" in the phrase "most promising place." In so doing, the majority has concluded that the Whistler's Park address was the most promising place to search and that there was therefore not probable cause to search the underground house on Cal Henry Road.[1]

With the stated principles of search warrant analysis in mind, I analyze the affidavit differently than the majority.

The majority correctly concludes that all of the information in the affidavit is trustworthy and can be considered in determining the existence of probable cause. The affidavit indicates that Nora Villagran[2] and Norman Lee Waterbury owned property seized from the Lookingglass location, including over a ton of marijuana, irrigation pumps, water pipes and planting materials. The application requested a warrant to search for "receipts, invoices, cancelled checks and ledger books regarding purchase and payment for" the items seized from the Lookingglass property. The affidavit designated the place to search as "the property located at a driveway adjacent to the Cal Henry driveway and residence located at 1054 Cal Henry Road and including a trailer[3] with a barn behind it, both to the left side of the driveway and an 'underground' house further down the driveway." The police were seeking documentary evidence as to who had purchased some of the property seized in the search of the Lookingglass property. They

---

[1] The record of the sentencing hearing discloses that a search warrant was also obtained for the Whistler's Park address.

[2] Nora Villagran is defendant's sister.

[3] Later in the affidavit the trailer is described as a "trailer house."

were seeking it not solely from the underground house, as suggested by the majority, but from the Cal Henry Road property, which included a trailer house, a barn and the underground house. The evidence which was the basis of defendant's conviction was seized from the trailer house on Cal Henry Road. There is no contention that the trailer house was beyond the scope of the search warrant.

The affidavit, directly or by implication, discloses that there was a rather sophisticated marijuana growing operation on the Lookingglass property and that Nora Villagran and Norman Lee Waterbury were directly involved in that enterprise. The list of items taken from Lookingglass does not contain any books, records, receipts or invoices relating to the enterprise. It is logical that the operator of an extensive enterprise involving elaborate irrigation equipment would have records of the purchase of the associated equipment. It is also logical that if the records were not found at Lookingglass, they would be elsewhere and where Nora Villagran or Norman Lee Waterbury lived.

The affidavit discloses at least two promising locations. Both of the individuals had a common mailing address on Whistler's Park Road. It is logical that they lived at this address even though it was the business address of B & N Greenhouse Supply. There was also a basis in the affidavit for inferring that at least Waterbury lived on Cal Henry Road. It appears clear to me that the affiant was describing a single parcel of property on Cal Henry Road, including a barn, trailer house and the underground house. He described the location of these three structures in terms of a single driveway, not separate pieces of property on a public roadway. It is logical that the structure described as a trailer house was someone's residence and also logical that it was Waterbury's residence, because he was building an underground house on the property.

The majority says that nothing in the affidavit suggests the the underground house was sufficiently far-advanced to house anything much less the evidence sought by the warrant. I agree that there is no indication of the progress of the construction, but I do not agree that that

necessarily means the house could not be a repository of records. More pertinent to our inquiry is the statement in the affidavit that the Cal Henry Road property contained a trailer house. This leads to an inference that there was a residence on the property in which Waterbury had an interest sufficient to build a house. Thus, the character of the underground house is not dispositive of the issue.

From the four corners of the affidavit, I conclude there was a basis to search the Cal Henry Road property. The search warrant affidavit should be sustained and the conviction affirmed. I dissent.

Thornton, Warren and Van Hoomissen, JJ., join in this dissent.