KENNON, Justice.
 

 From a two year penitentiary sentence imposed after conviction of “simple burglary” (of the railway station at Ponchatoula, La.), the defendant has taken this appeal.
 

 The first of the six bills of exception was reserved to the overruling of defendant’s request for postponement of arraignment (July 10, 1945) and to the fixing of the case for trial (July 17, 1945) because his counsel due to being engaged in the trial of other cases, had not had sufficient time for preparation of his case. This is a matter that addresses itself to the sound.discretion of the trial judge who noted in his per curiam that “ * * * the accused had the assistance of the Chief Dy Sheriff * * * ” and that “ * * * nothing more could have been done to assist the accused than was done by his attorney and those interested in his defense if the case had been continued for three months or a year”.
 

 Bill No. 2 was reserved to the overruling of defendant’s formal motion for a continuance filed when the case was called for trial. The motion states no ground other than that the attorney had been engaged in the trial of “two cases in St. Helena Parish during the past week”. The court overruled this motion for the same reason given in overruling Bill No. 1. The circumstances indicate no abuse of discretion. The trial of two other cases the week preceding is not of itself a ground for continuance. There is no showing that there were special or emergent circumstances in this case or that counsel was not timely employed. The accused was in the parish jail when the Grand Jury met on June 18th. In a simple burglary case, experienced counsel with such able assistance as the Chief Deputy Sheriff should have had no difficulty in preparing for arraignment and trial in the three weeks period between the indictment and arraignment and the seven days between arraignment and trial.
 

 Bill No. 3 was reserved to the admission of “bloodhound testimony”. The principal objection, as shown by the record, being that the dog which the Ponchatoula town marshal had purchased from the penitentiary captain at Angola, was not registered.
 

 A rather complete statement of the law as to bloodhounds is found in the case of State v. Harrison, 149 La. 83, 88 So. 696, 697, in which the opinion of Chief Justice O’Niell recites:
 

 “So-called bloodhound testimony is admissible in evidence against a person accused of crime,
 
 merely as a circumstance
 
 
 *164
 

 tending to prove his guilt.
 
 State v. King, 144 La. 430, 80 So. 615. In some states such evidence is not admissible at all, and, in those states in which it is admissible, the rule is that it should not be admitted until a proper foundation has been laid, by some proof of the reliability of the dogs, their acuteness of scent and power or sense ■of discrimination, and, in that respect, their reputation for trailing criminals, their pedigree, training, etc.
 
 With all that, the text-writers on the subject doubt that any trial judge would allow a conviction to stand upon proof only of the trailing by bloodhounds.”
 
 (Italics by writer of this opinion.)
 

 The judge’s per curiam shows that the “bloodhound” testimony was merely one of the circumstances upon which the verdict was based. He states that the conviction was upon the defendant’s confession and other corroborative testimony of which the “bloodhound” evidence was only one part. The defendant was not denied the privilege of cross-examination or of offering additional testimony that the dog though unregistered, was unreliable or unskilled or that he acted on the trail so as to deprive the evidence of incriminating value. We think that the courts of this State have been rightfully cautious in admitting this “dumb-animal” testimony and that the rule announced in the quotation above is a proper one and that along with the conditions stated in the rule, the defendant should have the fullest opportunity by cross-examination and otherwise to inquire into the breeding and testing of the dog and into the circumstances and details of the hunt and to introduce other relevant testimony tending to destroy the incriminating value of the evidence. The facts of the case at bar bring it within the rule rather broadly recognized that under certain circumstances, and subject to the defendant’s right to cross-examination and to introduce evidence of contradicting facts, testimony as to trailing by bloodhounds may be permitted to go to the jury “for what it is worth” as “one of the circumstances” which may tend to connect the defendant with the crime.
 

 Bill Nos. 4 and 5 were reserved to the overruling of defendant’s objection to the admissibility of the testimony of the verbal confessions made to the police officers at Ponchatoula on the ground that same .were not freely and. voluntarily given. The cross-examination of officers Tucker and Pittman satisfied the court that the confessions were freely made without third degree treatment and without such promises that would bring them within the prohibition of the Constitution and Article 452 of the Code of Criminal Procedure that “No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel a confession of crime.” No testimony was introduced to contrad' A the officers who both testified on cross-examination that the accused was properly fed and housed and
 
 *166
 
 that he was subjected to no pressure or ill treatment while in jail or during the several questionings between his arrest on Monday night and his confession on Tuesday afternoon. In our State, the provisions — Article I, Section 11 of the Constitution and Article 452 of the Code of Criminal Procedure, above quoted — -against compelling a confession are clearly and strongly worded and constitute a clear mandate to the courts to give full protection to a person against “any treatment designed by effect on body or mind to compel a confession of crime.” Officer Pittman testified that
 
 after Green had confessed,
 
 Green asked “ * * * what I thought about his confessing, did I think it would be lighter? I said I couldn’t say if it might be.” Officer Tucker’s statement of the Tuesday evening confession is in substance the same: “ * * * I think it was on Tuesday evening late I went with Mr. Pittman. He went to feed them, and Percy freely admitted it. He said without any threats or promises that he and Walter Carey had gone in the depot,
 
 and wanted to know
 
 if he could get off any lighter if he would tell the truth. I told him I had nothing to do with what the Court had to say but I thought it might help a little bit if he would tell the truth about the whole thing, and then he proceeded to give us
 
 more facts
 
 which coincided with the facts given previously by Walter Carey.” (Italics ours.) Had statements of such a nature been made to the defendant prior to his initial confession, the bill would be a more serious one. Under the facts of this case, the objections were properly overruled.
 

 Bill No. 6 was reserved to the action of the trial judge in overruling the motion for a new trial. The matters set forth therein have not been urged except in connection with the'bills of exception previously passed upon. >
 

 Affirmed.