**Paris L. STARKES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 79–919.**

District of Columbia Court of Appeals.

Argued Oct. 2, 1980.
Decided Feb. 19, 1981.

---

R. Kenneth Mundy, Washington, D. C., with whom William Francis X. Becker, Washington, D. C., was on the brief for appellant.

Barry M. Tapp, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, John R. Fisher and Bette E. Uhrmacher, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and KERN and PRYOR, Associate Judges.

NEWMAN, Chief Judge:

After a jury trial, appellant was convicted of rape while armed and other related offenses. He raises three contentions on appeal, only one of which merits discussion—that the court erred in allowing testimony concerning actions of a trained tracking dog.[1] We conclude that the trial court committed no reversible error and affirm.

At 9:30 p. m. on October 19, 1977, complainant left home and walked toward a bus stop in front of the Ria Restaurant, located at Rhode Island Avenue and Otis Street, N.E., in the District of Columbia. While waiting at the bus stop, a man approached her and asked for a cigarette. After complainant replied that she did not smoke, the man grabbed her by the collar of her jacket, placed a pistol to her head, and demanded money. The assailant then dragged her behind some nearby buildings, where, at gunpoint, he raped her and forced her to commit acts of anal and oral sodomy. A little while later, complainant stumbled through the front door of the Ria Restaurant, where she collapsed on the floor. Two police officers arrived shortly thereafter, and she described her assailant to them. She subsequently identified appellant as her assailant through photographs, at a lineup, and in court.

Following the arrival of the other officers, Officer Frederick Lewis of the Metropolitan Police Canine Corps arrived with his tracking dog, Major 8. Upon being taken to the scene of the crime, Major 8 detected a scent and followed it into the Ria Restaurant to an empty chair at a table where a group of people was sitting. Testimony adduced at trial indicated that appellant had been in that chair minutes before the dog arrived. Officer Lewis testified as to

1. Appellant's other contentions are that: (1) he was denied his constitutional right to a speedy trial; and (2) the trial court erroneously permitted him to be impeached by a prior inconsistent statement. We find no error in the trial court's ruling on speedy trial. Assuming, without deciding, error on the impeachment issue, we conclude it was harmless.

the dog's training, past performance, and performance in the instant case. Several other witnesses who observed Major 8 in the restaurant also testified as to the dog's actions.[2]

■ Appellant contends that the trial court committed reversible error by permitting Officer Lewis to testify about Major 8's performance. He specifically maintains that a proper foundation was not laid to establish the tracking dog's past record of accuracy and reliability. He also contends that since the dog could not be cross-examined, testimony regarding its actions is inadmissible.

"The capacity of trained dogs to follow a human's trail has long been known." *Commonwealth v. LePage*, 352 Mass. 403, 419, 226 N.E.2d 200, 210 (1967). Numerous courts have held admissible testimony regarding tracking by trained dogs, where the testimony is received as circumstantial or corroborative proof of an accused's involvement in the commission of an offense. In *United States v. Joyner*, 160 U.S.App.D.C. 384, 387, 492 F.2d 650, 653 (1974), for example, the court allowed testimony of a police expert concerning the use of a tracking dog to locate the defendant. Moreover, it appears that thirty-five states have directly passed on the admissibility of "bloodhound" evidence. *See Evidence of Trailing by Dogs in Criminal Cases*, Annot., 18 A.L.R.3d 1221, §§ 2, 3 (1968 & Supp.1980). Thirty of these states hold such evidence to be admissible, while five hold it inadmissible. *Id.*

In allowing testimony regarding tracking by trained dogs, courts generally have held that a foundation must first be laid to show: (1) that the handler was qualified to use the dog; (2) that the particular dog used was trained and tested in tracking human beings; (3) that the dog had been laid upon a trail which circumstances indicated was made by the accused; (4) that the trail had not become so stale or contaminated as to be beyond the dog's ability to follow it; and (5) that the dog had been found reliable in past cases. Finally, the dog's reliability must be proven by an individual having personal knowledge of the dog's training, abilities, and past tracking record. *Pedigo v. Commonwealth*, 103 Ky. 41, 44 S.W. 143 (1898); *Terrell v. State*, 3 Md.App. 340, 344–58, 239 A.2d 128, 130–38 (1968); *People v. Harper*, 43 Mich.App. 500, 508, 204 N.W.2d 263, 268 (1972). We adopt this approach.

■ In the instant case Officer Lewis, one of Major 8's trainers, testified that the dog had been "trained to track suspects, do article searches, search buildings where people might be hiding [and] to locate lost children." He also pointed out that Major 8 had received courses in agility, obedience, and scent training during his thirteen years with the Canine Corps and that the dog's tracking ability had been rated as excellent. The dog had been successful in locating criminal suspects in more than one hundred cases. The record shows that Officer Lewis placed Major 8 on the trail shortly after the commission of the crime. He testified that the dog followed a scent from the crime scene to a chair inside the Ria Restaurant. Other witnesses corroborated Officer Lewis' testimony and established that appellant had been sitting in the chair minutes before the arrival of Major 8. Under these circumstances, we find that proper foundation

2. Appellant's convictions did not rest exclusively upon testimony regarding Major 8's performance. One witness, Richard Berford, for example, testified that he was using the public telephone on Rhode Island Avenue on the night of the crime. From this location, he saw appellant grab the victim, strike her, and then drag her behind some buildings. The witness testified that he recognized appellant because he had seen him in the neighborhood on several occasions. Similarly, he recognized the complainant because he had spoken to her several times in the past. Another witness, William

Scott, was in the Ria Restaurant when she stumbled through the door. He testified that after the ambulance crew removed her from the restaurant, appellant joined him and others at a table. While sitting at the table, Scott overheard appellant mumble to himself, "I don't know why she did it. She made me do that. I don't know why she made me do that." A short while later, appellant left the table. Thereafter, Major 8 entered the restaurant and walked up to the chair in which appellant had been sitting, according to Scott.

was laid and that the trial court did not err in permitting testimony as to the dog's actions. With respect to appellant's observation that the dog could not be cross-examined, we point out that other demonstrative evidence such as photographs and exhibits also cannot be cross-examined. Nevertheless, such evidence may be admissible if relevant, material, and probative, and if proper foundation is laid. *McCormick on Evidence*, § 212 (2d ed. 1972).

*Affirmed.*