520 A.2d 1177

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Chris Lamont MICHAUX, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 4, 1986.

Filed Jan. 12, 1987.

Reargument Denied Feb. 20, 1987.

Mark S. Galper, Monessen, for appellant.

Judith K. Ciszek, Assistant District Attorney, Greensburg, for Commonwealth, appellee.

Before CAVANAUGH, WIEAND and JOHNSON, JJ.

WIEAND, Judge:

Chris Lamont Michaux was convicted by a jury of burglary and criminal conspiracy and was sentenced to serve a

term of imprisonment of not less than two nor more than four years. The conviction was based entirely upon circumstantial evidence, including evidence that a police bloodhound had tracked and identified Michaux as one of the perpetrators of the burglary. In this appeal, Michaux argues that (1) the evidence was insufficient to prove his guilt beyond a reasonable doubt; (2) the testimony that a bloodhound had trailed and identified him was inadmissible hearsay, the admission of which violated his right to confront witnesses against him; (3) the trial court erred in allowing the dog tracking evidence to be received because a proper foundation for the receipt of the evidence had not been laid; and (4) the trial court erred when it ruled that Michaux's expert witness could not testify on the subject of dog tracking. Although these issues are novel and interesting, we conclude that the trial was free of error and the evidence sufficient to support the guilty verdicts. Therefore, we affirm the judgment of sentence.

During the early morning hours of February 9, 1984, Kayton J. Emerick observed three men enter the Brush and Hostoffer Appliance Store on Main Street in the Borough of Mount Pleasant.[1] Emerick called the police, and Officer Richard McElfresh was dispatched to the scene. McElfresh arrived at the store at or about 5:19 a.m. and stopped his vehicle behind a burgundy Chrysler parked directly in front of the store. McElfresh observed that the motor of the automobile had been left running and that the first three letters on the license plate were FWK. The last three digits of the license plate were covered by a rag. Shortly after McElfresh's arrival, an individual exited the store carrying a television set. McElfresh was subsequently able to identify this person as Anthony Van Settle. When Van Settle saw the police officer, he dropped the television, shouted something in the direction of the store, and dove

---

1. Emerick died prior to trial. However, the testimony which he had given at the preliminary hearing was read to the jury at trial as part of the Commonwealth's evidence. The only description which Emerick had been able to give of the burglars was that they were about eighteen to twenty years old.

into the front seat of the Chrysler automobile. Two other men immediately ran from the store and entered the automobile, which then sped away. McElfresh did not get a good look at these two men, but did notice that they were wearing dark clothing. McElfresh pursued the vehicle for several miles, heading in a westerly direction on Route 31. He lost sight of the vehicle, however, when he was forced to slow his vehicle to negotiate a sharp curve in the vicinity of the Gulisek Construction Company. A short time later, McElfresh came upon the same vehicle, abandoned in a ditch not far from the construction company. The officer could see no one in the vicinity of the abandoned vehicle; however, he observed footprints in the snow leading toward a wooded area. McElfresh called for assistance; he requested specifically a bloodhound team from the Greensburg Fire Department.

Approximately forty-five minutes later, the bloodhound team arrived and assumed control at the scene. Officer John Seighman of the Greensburg Fire Department scented his bloodhound, "Jake," on the front seat of the Chrysler automobile. Jake then began to follow one of the three sets of footprints leading into the woods. When the footprints disappeared, Jake continued into the woods, through a group of thickly clustered pine trees, and back onto Route 31.

In the meantime, Officer McElfresh, who had remained at the abandoned car, observed an individual, later identified as Michaux, walking toward him on Route 31. McElfresh approached Michaux and, after observing that he had pine needles in his hair and weeds protruding from his collar, took him into custody. Shortly thereafter, Officer Seighman and his dog arrived back at the scene of the abandoned vehicle. They approached in the same direction from which Michaux had come. Jake sniffed several of the people present, but stopped when he came to Michaux and nosed him "like a vacuum cleaner." Seighman interpreted this to mean that Jake had found the person whose scent he had been following.

In addition to this evidence, the Commonwealth produced the testimony of Kevin Hutchinson, the operator of a light truck which had been called to the scene. Hutchinson testified that he drove the light truck from the abandoned automobile toward Mount Pleasant, looking for the suspects along the road. Immediately beyond the group of pine trees, he had made a u-turn and had parked the truck along the side of the road. Hutchinson stated that no one had come toward him from the direction of Mount Pleasant during the time in which he was standing by his truck. Michaux, therefore, had made his appearance along the road at a point between Hutchinson and the abandoned Chrysler.

In *Commonwealth v. Hoffman,* 52 Pa.Super. 272, 279 (1912), this Court held that where a proper foundation has been laid, "testimony as to trailing by a bloodhound may be permitted to go to the jury for what it is worth, as one of the circumstances which may tend to connect the defendant with the crime with which he is accused." This is in accord with the majority view. See: *United States v. Carroll,* 710 F.2d 164 (4th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 526, 78 L.Ed.2d 709 (1983); *Hodge v. State,* 98 Ala. 10, 13 So. 385 (1893); *State v. Coleman,* 122 Ariz. 130, 593 P.2d 684 (1978); *Holub v. State,* 116 Ark. 227, 172 S.W. 878 (1915); *People v. Craig,* 86 Cal.App.3d 905, 150 Cal.Rptr. 676 (1978); *State v. Wilson,* 180 Conn. 481, 429 A.2d 931 (1980); *Cook v. State,* 374 A.2d 264 (Del.1977); *Starkes v. United States,* 427 A.2d 437 (D.C.App.1981); *Tomlinson v. State,* 129 Fla. 658, 176 So. 543 (1937); *Mitchell v. State,* 202 Ga. 247, 42 S.E.2d 767 (1947); *State v. Netherton,* 133 Kan. 685, 3 P.2d 495 (1931); *Daugherty v. Commonwealth,* 293 Ky. 147, 168 S.W.2d 564 (1943); *State v. Green,* 210 La. 157, 26 So.2d 487 (1946); *Roberts v. State,* 298 Md. 261, 469 A.2d 442 (1983); *Commonwealth v. LePage,* 352 Mass. 403, 226 N.E.2d 200 (1967); *People v. Harper,* 43 Mich.App. 500, 204 N.W.2d 263 (1972); *Hinton v. State,* 175 Miss. 308, 166 So. 762 (1936); *State v. Fields,* 434 S.W.2d 507 (Mo.1968); *State v. Taylor,* 118 N.H. 855, 395 A.2d 505 (1978); *People v. Centolella,* 61 Misc.2d 723, 305 N.Y.S.2d 279 (1969);

*State v. Rowland,* 263 N.C. 353, 139 S.E.2d 661 (1965); *State v. Iverson,* 187 N.W.2d 1 (N.D.), *cert. denied,* 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971); *State v. Dickerson,* 77 Ohio St. 34, 82 N.E. 969 (1907); *Buck v. State,* 77 Okl.Cr. 17, 138 P.2d 115 (1943); *State v. Harris,* 25 Or.App. 71, 547 P.2d 1394 (1976); *State v. Brown,* 103 S.C. 437, 88 S.E. 21 (1916); *Copley v. State,* 153 Tenn. 189, 281 S.W. 460 (1926); *Parker v. State,* 46 Tex.Cr. 461, 80 S.W. 1008 (1904); *State v. Bourassa,* 137 Vt. 62, 399 A.2d 507 (1979); *Epperly v. Commonwealth,* 224 Va. 214, 294 S.E.2d 882 (1982); *State v. Loucks,* 98 Wash.2d 563, 656 P.2d 480 (1983); *State v. McKinney,* 88 W.Va. 400, 106 S.E. 894 (1921); Annotation, *Evidence of Trailing by Dogs in Criminal Cases,* 18 A.L.R.3d 1221, § 3 (1968). But see: *People v. Pfanschmidt,* 262 Ill. 411, 104 N.E. 804 (1914); *Ruse v. State,* 186 Ind. 237, 115 N.E. 778 (1917); *State v. Grba,* 196 Iowa 241, 194 N.W. 250 (1923); *State v. Storm,* 125 Mont. 346, 238 P.2d 1161 (1951); *Brott v. State,* 70 Neb. 395, 97 N.W. 593 (1903).

These courts are agreed that before evidence of dog trailing may be received, however, the training and reliability of the dog, the qualifications of the person handling the dog, and the circumstances surrounding the trailing by the dog must be shown. See: Annotation, *supra* at § 5. While the specific requirements differ in some respects from state to state, most courts are in substantial agreement that the proponent of the evidence must show that (1) the handler was qualified, both by training and experience, to use the dog; (2) the dog was adequately trained to track humans; (3) the dog, by virtue of experience, was reliable in tracking humans; (4) the dog was placed on track at a place where circumstances showed the guilty party to have been; and (5) the trail had not become so stale or contaminated that it was beyond the dog's ability to follow. See: *Orr v. State,* 236 Ala. 462, 183 So. 445 (1938); *State v. Coleman, supra; Holub v. State, supra; People v. Craig, supra; State v. Wilson, supra; Cook v. State, supra; Starkes v. United States, supra; Tomlinson v. State, supra; Mitchell v. State, supra; State v. Netherton, supra; Pedigo v. Com-*

*monwealth,* 103 Ky. 41, 44 S.W. 143 (1898); *State v. Green, supra; People v. Norwood,* 70 Mich.App. 53, 245 N.W.2d 170 (1976); *Hinton v. State, supra; State v. Steely,* 327 Mo. 16, 33 S.W.2d 938 (1930); *State v. Taylor, supra; People v. Centolella, supra; State v. Rowland, supra; State v. Iverson, supra; State v. Dickerson, supra; Buck v. State, supra; Commonwealth v. Hoffman, supra; Copley v. State, supra; Parker v. State, supra; State v. Bourassa, supra; Epperly v. Commonwealth, supra; State v. Louks, supra; State v. McKinney, supra.*

Even where evidence of dog tracking is properly received, however, most courts hold that standing alone it is not sufficient to support a conviction. See: *State v. Fixley,* 118 Kan. 1, 233 P. 796 (1925); *Meyers v. Commonwealth,* 194 Ky. 523, 240 S.W. 71 (1922); *State v. Green, supra; Terrell v. State,* 3 Md.App. 340, 239 A.2d 128 (1968); *People v. McPherson,* 85 Mich.App. 341, 271 N.W.2d 228 (1978); *Fisher v. State,* 150 Miss. 206, 116 So. 746 (1928); *State v. Cheatham,* 458 S.W.2d 336 (Mo.1970); *Buck v. State, supra; State v. Taylor, supra; People v. Centolella, supra; State v. Yearwood,* 178 N.C. 813, 101 S.E. 513 (1919); *State v. Brown, supra; Copley v. State, supra;* Annotation, *supra* at § 6. This was summarized by the Supreme Court of the State of Washington in *State v. Loucks, supra,* as follows:

Courts which allow dog tracking evidence regard its probative value with some suspicion. *See generally* Comment, *Evidence-Admissibility in Criminal Prosecution of Evidence of Tracking by Bloodhounds Indicating Guilt of Accused,* 9 Wash. & Lee L.Rev. 248, 251 (1952); 1 J. Wigmore, *Evidence* § 177, at 635–37 (3d ed. 1940). Most courts allowing dog tracking evidence restrict its use to corroborative purposes only. *E.g., State v. Fixley,* 118 Kan. 1, 5, 233 P. 796 (1925). In *People v. McPherson, supra,* the Michigan Court of Appeals stated that dog tracking evidence is cumulative only, and must be supported by corroborating evidence to sustain a conviction.

*McPherson,* 85 Mich.App. at 344–45, 271 N.W.2d 228. *See also* 30 Am.Jur.2d *Evidence* § 1146 (2d ed. 1967).

The dangers inherent in the use of dog tracking evidence can only be alleviated by the presence of corroborating evidence identifying the accused as the perpetrator of the crime. Police dogs cannot be conclusively relied on to follow the trail of one individual if other human trails cross this one, or even come near it. Craig, *The Dog as a Detective,* 18 Sci. Monthly 38, 39 (1924), cited in 1 J. Wigmore, *Evidence, supra* at 637. While a dog's trainer may be available for cross examination, he obviously will be unable to answer many questions bearing on the reliability of the dog's conclusions. Comment, 9 Wash. & Lee L.Rev. at 253–54. For a pungent analysis of the capability of tracking dogs *see Brott v. State,* 70 Neb. 395, 397–98, 97 N.W. 593 (1903).

*Id.,* 98 Wash.2d at 567, 656 P.2d at 482.

Michaux contends that the dog tracking evidence in the instant case was not sufficiently corroborated and, therefore, that the evidence was insufficient to sustain his conviction. We disagree.

"In reviewing the sufficiency of the evidence, we view the evidence presented and all reasonable inferences therefrom in the light most favorable to the Commonwealth as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt." *Commonwealth v. Campbell,* 353 Pa.Super. 178, 181, 509 A.2d 394, 395 (1986). See: *Commonwealth v. Rivera,* 349 Pa.Super. 303, 305, 503 A.2d 11, 12 (1985); *Commonwealth v. Taylor,* 324 Pa.Super. 420, 424, 471 A.2d 1228, 1229 (1984). When so viewed, we conclude that the evidence in the instant case was adequate to prove Michaux's guilt.

Officer McElfresh testified that shortly after his arrival at the scene of the reported burglary, he observed three men run from the store and enter a burgundy Chrysler automobile. When the vehicle sped away, McElfresh pursued it. Although McElfresh lost sight of the vehicle a few times during his pursuit, his testimony was adequate to

establish that the automobile which he found a few minutes later, abandoned along the side of the road, was the vehicle which had been used by the burglars and that the suspected burglars were the last persons to have occupied the vehicle. Our inquiry, therefore, must be whether the Commonwealth's evidence was sufficient to prove beyond a reasonable doubt that Michaux had been one of the occupants of the abandoned vehicle.

The evidence provided by the bloodhound which linked appellant to the abandoned vehicle was not uncorroborated. The bloodhound had followed Michaux's scent from the front seat of the abandoned vehicle, through a wooded area, and into a group of closely clustered pine trees. Officer Seighman testified that the clump of pine trees had been very difficult to pass through because of the fullness of the low hanging branches. Nonetheless, the dog followed the scent through the pine trees, back onto the road and along the road to Michaux, who by this time had returned to the abandoned automobile. The evidence was also that Michaux had been observed walking along Route 31 toward the abandoned automobile. The bloodhound followed the same route. Moreover, when taken into custody, Michaux had pine needles in his hair and weeds protruding from his collar. This evidence, taken in conjunction with Kevin Hutchinson's testimony that he had observed no one walking along Route 31 on the other side of the pine trees and toward them, permitted an inference that Michaux had emerged from the clump of pine trees and entered the roadway from where he took the same route followed by the bloodhound to return to the Chrysler vehicle. These facts, although not conclusive, established sufficient corroboration of the dog tracking evidence to permit a jury to conclude that the evidence provided by the dog was reliable. Once the reliability of the dog tracking evidence was established, the jury could properly rely upon it to find that appellant had been one of the persons who had been inside the vehicle previously observed speeding away from the site of the burglary.

There were additional circumstances which the jury was entitled to consider. Appellant was found walking in a rural area of Westmoreland County, forty miles from home, at 6:00 in the morning. He was wearing dark clothing, as were the men who had been observed running from the appliance store; and both he and Anthony Van Settles, who was also found near the abandoned automobile and who was positively identified at trial as one of the men who Officer McElfresh had seen running from the store, were shown to have resided two blocks from each other in Fayette County. After considering all of the Commonwealth's evidence, we conclude that it was adequate to support the jury's finding that appellant was one of the burglars.

■ "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *Commonwealth v. Cassidy*, 315 Pa.Super. 429, 433, 462 A.2d 270, 272 (1983). See: *Commonwealth v. Perry*, 279 Pa.Super. 32, 37–38, 420 A.2d 729, 732 (1980); *Commonwealth v. Rhodes*, 272 Pa.Super. 546, 554, 416 A.2d 1031, 1035 (1979); *McCormick on Evidence*, § 246 (3d ed. 1984). Michaux contends that the trial court erred when it permitted Officer Seighman to testify as to the dog's actions, because such testimony constituted hearsay. In essence, he contends that the dog was the real witness, and that the officer's testimony regarding the dog's identification was hearsay. We reject this contention. "It is the human testimony that makes the trailing done by the animal competent; and [the dog's] actions are described by human testimony as it would describe the operations of a piece of intricate machinery." *State v. Dickerson, supra*, 77 Ohio St. at 69, 82 N.E. at 976. See: *Starkes v. United States, supra; State v. Davis*, 154 La. 295, 97 So. 449 (1923); *Terrell v. State, supra*. Officer Seighman testified to his and the dog's training; to the conduct which he observed as the dog trailed Michaux; and to his interpretations of this conduct. Seighman was present in court and was extensively cross-examined by

defense counsel. The testimony which he gave did not constitute hearsay.

■ Michaux's contention that the Commonwealth failed to lay a proper foundation for the admission of the dog tracking evidence in the instant case is also lacking in merit. Officer Seighman testified extensively as to his training and qualifications as a trainer and handler of bloodhounds. He stated that he had been a trainer and handler of bloodhounds since 1975 and that during the interim period he had participated in numerous training programs designed to train and test dogs and handlers in tracking human scents. He produced, and the trial court received, numerous certificates which he had earned by participating in such courses. The officer also testified that he had been involved in numerous trackings of humans by bloodhounds which had been successful. His testimony was clearly sufficient to establish his qualifications as an expert dog handler. Seighman also testified in detail as to the methods used to train "Jake" in tracking human scents and described actual situations in which the dog had successfully tracked humans. We hold, therefore, that the training and reliability of the dog in question were satisfactorily established.

■ Finally, the evidence established that the dog had been scented at a place where the burglars were known to have been, i.e., the abandoned automobile, and that the trail had not become stale or contaminated. Thus, the Commonwealth was able to lay an appropriate foundation for the admission of Officer Seighman's testimony regarding the dog's trailing and identification of Michaux.

Michaux also contends that the trial court erred by ruling that his witness could not testify as an expert unless it were shown that the witness had conducted experiments concerning the ability of dogs to trail and identify humans by their scent. An examination of the record reveals, however, that the trial court made no such ruling. After an extensive discussion had been held at side bar and in chambers regarding the substance of the witness' testimony, as well as his qualifications, the trial judge indicated that he was

inclined to rule that the witness could not testify about a subject with which he had no first hand experience. However, the court adjourned for lunch without making a final ruling on the issue. During the lunch hour, defense counsel excused the witness without waiting for a definitive ruling by the court. As a result, no ruling was ever made. Under these circumstances, Michaux cannot contend successfully that the trial court refused to permit the witness to testify. The record shows, rather, that counsel abandoned his attempt to present the witness' testimony and excused the witness without attempting to qualify him as an expert.

The judgment of sentence is affirmed.

JOHNSON, J., files a concurring opinion.

JOHNSON, Judge, concurring:

I agree with the majority opinion that since the witness is the handler and not the dog, and since the handler was subject to cross-examination and confrontation, appellant's claim of inadmissable hearsay is meritless. There was no 6th Amendment violation.

I also agree, as correctly pointed out by the distinguished trial judge, the Honorable Charles H. Loughran, that appellant has not preserved his claim concerning alleged trial error in refusing to permit defendant's expert to testify. As the record establishes, the defense sent the expert home without calling him to the stand, and without a ruling having been made. The issue is thus waived.

I join in the majority opinion's determination that a complete and proper foundation was laid for the dog handler's testimony and that the training and reliability of the dog in question were satisfactorily established.

Although the majority opinion does not appear to directly address the issue, I also agree with the distinguished trial judge that the pre-trial suppression motion judge did not commit error in refusing to suppress testimony pertaining to the trailing and identification of the defendant by a bloodhound. Judge Loughran correctly determined that

these issues were not matters of evidence obtained in violation of defendant's rights but are properly matters for the trial court.

My disagreement with the majority opinion relates only to the analysis concerning the sufficiency of the evidence and the weight to be accorded the testimony as to trailing by a bloodhound.

The majority opinion would permit an inference that dog tracking evidence must be sufficiently corroborated by other, independent facts before a jury may be permitted to consider such evidence as reliable. Since the facts of this case do not require us to consider whether evidence of dog tracking, standing alone, is sufficient to support a conviction, I cannot join so much of the majority opinion as seems to address itself to that issue.

In *Commonwealth v. Hoffman*, 52 Pa.Super. 272, 279 (1912), this court set forth the criteria for admission of dog tracking evidence in Pennsylvania:

In order to make such testimony competent, even when it is shown that the dog is of pure blood, and of a stock characterized by acuteness of scent and power of discrimination, it must be established that the dog in question is possessed of these qualities, and has been trained and tested in their exercise, in the tracking of human beings, by a person who has knowledge and experience in such a matter, and that the test was made by starting the dog at a point where the circumstances tend clearly to show that the alleged guilty party had been, at a time when his presence would instinctively be known to the dog. When so indicated, testimony as to the trailing by a bloodhound may be permitted to go the the jury for what it is worth, as one of the circumstances which may tend to connect the defendant with the crime with which he is accused. It is a circumstance, and the weight to be given to it depends upon the other facts in the case.

The *Hoffman* court went on to say, 52 Pa.Super. at 280:

The defendant presented a point (seventh assignment) "unless the jury find there is sufficient evidence outside

of that furnished by the bloodhound, they will not be justified in convicting the defendant," was properly refused as it was for the jury to consider that testimony in connection with all the other evidence. It was not conclusive in and of itself, but could be considered as any other circumstance in the case, that was legitimately in evidence.

I find the facts and the law set forth in *Hoffman* to be sufficient to permit us to decide the case presently before us without resort to the positions taken on this issue in other jurisdictions. Appellant does not ask us to overrule *Hoffman*, nor would that be appropriate for this three-judge panel.

In its Brief before this court, Appellant argues that the sole evidence linking him to the commission of the crimes charged is testimony as to the tracking and identification of the appellant by a bloodhound. Appellant goes on to argue that "the absence of further corroborating evidence" renders the dog tracking evidence insufficient to provide a basis for his conviction. Brief for Appellant, Summary of Argument, at 16. The majority accepts this assertion suggesting the need for corroborating evidence in the analysis. I believe this to be a misleading approach to the proper resolution of the sufficiency question. It places undue emphasis and primacy on the dog tracking testimony which, in my view, is not required or even suggested under *Hoffman*.

The *Hoffman* court expressly stated that testimony as to the trailing of a bloodhound may be permitted to go to the jury for what it is worth, as one of the circumstances which may tend to connect the defendant with the crime with which he is accused. The court points out that it is a circumstance which could be considered along with all other circumstances and the weight to be given it depends upon the other facts in the case.

The Commonwealth presented evidence which established that two men from the same area of Fayette County were found in close proximity many miles from home at 6:00

A.M. along a rural highway in Westmoreland County. The defendant was found outside a stand of pine trees. He had pine needles in his hair and weeds protruding from his collar. The car which had been used in the burglary had been pursued from the crime scene by a police officer who came upon the car in a ditch near the stand of pine trees. A set of footprints led from the car into the stand. Testimony of one witness indicated that the defendant had not been proceeding down the road for any appreciable distance prior to his apprehension near the stand.

I agree with Judge Loughran's conclusion that, without regard to the dog tracking evidence, "either defendant fell from the sky onto this desolate patch of highway (Route 31) or he came from inside the stand of pines where he had been hiding." Opinion by Loughran, J., July 2, 1985, page 16.

In my view, all of the evidence presented and the reasonable inferences deducible therefrom in the present case are sufficient to prove guilt beyond a reasonable doubt. It was for the jury to determine what weight, if any, would be given to the evidence relating to the tracking by a bloodhound.

I, therefore, concur in the result reached by the majority.