THE STATE OF OHIO, APPELLEE, *v.* BRIDGE, APPELLANT.

(No. L-88-354—Decided July 28, 1989.)

Anthony G. Pizza, prosecuting attorney, and *Thomas N. Tomczak,* for appellee.

*Penny H. Nasatir,* for appellant.

GLASSER, J. This matter is before the court on appeal from a judgment of the Lucas County Court of Common Pleas.

On June 8, 1988, defendant-appellant, Melvin Bridge, was indicted by the Lucas County Grand Jury on one count of aggravated burglary in violation of R.C. 2911.11 and one count of possession of criminal tools, R.C. 2923.24. The indictments arose out of an incident at the home of Adelle Hoover, 4130 Robinhood, Sylvania, Ohio.

Shortly before midnight on June 4, 1988, an intruder entered Hoover's house. A garage window was broken and a door leading to the house was forced open. Once in the house, the intruder broke through a locked bedroom door, shined a flashlight in Hoover's face and demanded to know where her money was. Having set off an alarm, the intruder turned and ran out of the house.

Officer Robert Hankenhof of the Sylvania Police Department was in the area and arrived on the scene almost immediately. Hankenhof chased a suspect through the wooded area adjacent to Hoover's home. The officer failed to apprehend the suspect during his initial pursuit and was subsequently assisted by a Lucas County Sheriff's Deputy, Michael Corbett, and his tracking dog, Nick. The deputy and Nick briefly entered the house, then proceeded through the woods eventually discovering appellant lying on the ground near a tree. Hankenhof placed appellant under arrest.

Appellant entered a plea of not guilty and the matter proceeded to a

trial by jury. The jury returned a verdict of guilty as to the aggravated burglary charge and not guilty as to the charge of possessing criminal tools. Appellant was sentenced according to law on October 21, 1988. It is from this judgment that appellant has appealed setting forth the following assignment of error:

"The verdict is against the manifest weight of the evidence."

In his sole assignment of error, appellant argues that the verdict reached by the jury is against the manifest weight of the evidence. Appellant asserts that, *without* the testimony provided by the dog handler, there was insufficient direct evidence to convict him of aggravated burglary. In the second portion of his argument, appellant contends that the jury accorded too much weight to the testimony offered by the dog handler.

In *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132, syllabus, the Supreme Court of Ohio stated:

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."

Appellant argues that plaintiff-appellee, the state of Ohio's case was composed almost entirely of circumstantial evidence and, therefore, the elements of aggravated burglary were not proven beyond a reasonable doubt. In order to support a conviction for aggravated burglary, the state must prove, *inter alia,* that the offender, by force, stealth or deception, trespassed in an occupied structure with the purpose of committing a theft offense or any other felony.

In the case *sub judice,* the evidence clearly establishes that an aggravated burglary was committed; however, appellant asserts that the only evidence linking him with the crime was circumstantial and was, therefore, insufficient to sustain his conviction. In particular, appellant argues that he was never validly identified by the victim or the arresting officer. Appellant further asserts that a significant length of time passed between the time when Hankenhof chased a suspect through the woods and when the dog located appellant. Finally, appellant contends that based upon his own testimony the jury could have concluded that he was in the vicinity of the crime purely by coincidence. Appellant testified that he had been drinking heavily, was walking to his sister's house, and had stopped near Hoover's house to relieve himself. Upon hearing Hankenhof shout at him, appellant stated that he ran into the woods between the houses, subsequently passing out on the spot where he was arrested.

Our analysis of the record indicates that the state produced evidence, both direct and circumstantial, from which the jury could have concluded, beyond a reasonable doubt, that appellant was the perpetrator of the burglary. Although Hoover was unable to effectuate a valid in-court identification, she stated that the intruder in her bedroom "* * * was maybe five-nine and husky. I thought not a child, about between thirty and thirty-five, dark hair * * *." Hankenhof stated that the suspect he chased through the woods was "* * * dark haired, [and] a little bit on the heavier side."

At the time Hankenhof received notification of the crime, he was less than two blocks from the house. Hankenhof testified that upon arriving at the scene, he heard movement in the woods, identified himself as a police officer and then pursued the suspect through the woods. Unable to locate the person he had been chasing, Hankenhof stated that he maintained a stationary position, in the woods, for approximately twenty minutes. Hank-

enhof testified that he proceeded back to the house upon hearing over his radio that Corbett and Nick had arrived.

Corbett testified that the "K-9" unit of the Lucas County Sheriff's Department had been in existence since 1986. Corbett stated that he was previously associated with a K-9 unit in Michigan and that Nick was the second dog he had worked with. Describing the training program, Corbett detailed the instructions he and Nick received in tracking human suspects. Corbett stated that, under his direction, Nick had been certified by the state of Ohio as a tracker.

After a short recess, the trial recommenced with Nick present in the courtroom. Corbett then testified as to his participation in the events leading to appellant's arrest. Referring to a "tracking activity sheet" he composed the morning after the incident, Corbett stated that, in view of the weather conditions, a tracking scent would be available for "[a] couple of hours." The record indicates that Corbett and Nick arrived at the house approximately forty-five minutes after Hankenhof. Corbett also stated that the crime scene had not been "contaminated" by the presence of individuals other than the victim and the perpetrator.

Corbett stated that upon arriving at the house, he "* * * put [Nick's] nose down to the area where the glass breakage was and * * * where the possible entry was made." In the space of about three minutes, the dog proceeded into the house, to the bedroom, past Hoover and then out the back door. Corbett and Nick journeyed through Hoover's backyard, into the woods and across an adjoining yard. At that point, Nick lay down, having located a garden glove apparently bearing the scent he had been tracking. The group, which now included Hankenhof, proceeded until the dog began "barking, [and] carrying on." Corbett stated that he could see "* * * a subject laying [sic] alongside of a tree." Hankenhof then placed appellant under arrest. Hankenhof testified that at the time of his arrest, appellant was sweating. Hankenhof further stated that appellant "* * * had his shirt off, was holding the shirt underneath a bush, was laying [sic] on his stomach. His hair seemed to be wet from the sweat."

Characterizing most of the above evidence as circumstantial, appellant argues that the jury placed too much weight on the testimony regarding the dog's tracking ability. Appellant admits that evidence of Nick's tracking is relevant to the state's case but argues that it should have been only corroborating evidence and asserts that the only "other evidence" available shows that appellant was found lying drunk in the woods. Appellant argues that he was never directly connected to the glove found by the dog, to the screwdriver and flashlight found by officers the next day, or to the crime scene itself. In essence, appellant contends that the dog tracking evidence was not sufficiently corroborated and, therefore, that the evidence as a whole was insufficient to sustain his conviction.

A majority of courts that have been confronted with the issue of "dog tracking" have concluded that before evidence of dog trailing may be admitted, the training and reliability of the dog, the qualifications of the person handling the dog, and the circumstances surrounding the trailing by the dog must be shown. *Commonwealth* v. *Michaux* (1987), 360 Pa. Super. 452, 457, 520 A. 2d 1177, 1179. Similar standards were advanced by the court in *People* v. *Centolella* (1969), 61 Misc. 2d 723, 305 N.Y. Supp. 2d 279. The *Centolella* court also stated that:

"* * * the court has a duty to

charge the jury to the effect that such evidence must be viewed with the utmost caution; that it is of slight probative value; that it must be considered, if found reliable, not separately but in conjunction with all the other testimony in the case; and in the absence of some other direct evidence of guilt would not warrant a conviction. Under adequate safeguards, a jury should be trusted to handle this problem sensibly." *Id.* at 725, 305 N.Y. Supp. 2d at 282.

A nearly identical caution was mandated by the Supreme Court of Ohio in *State* v. *Dickerson* (1907), 77 Ohio St. 34, 69, 82 N.E. 969, 976. See, also, *United States* v. *Gates* (C.A. 6, 1982), 680 F. 2d 1117.

In the case *sub judice,* we find that the evidence presented established that (1) Corbett was qualified, both by training and experience, to use the dog; (2) Nick was adequately trained to track humans; (3) Nick, by virtue of experience, was reliable in tracking humans; (4) Nick was placed on track at a place where circumstances showed the guilty party to have been; and (5) the trail leading from the house to appellant had not become stale or contaminated so that it was beyond Nick's ability to follow. See *Michaux, supra,* at 457, 520 A. 2d at 1179. The record also establishes that adequate safeguards were set forth by the trial court in its instructions regarding the weight that should be given to the opinion testimony of deputy Corbett. Accordingly, we find that the opinion testimony regarding Nick's tracking of appellant was properly admitted and that, viewed in its entirety, the record does not indicate that too much emphasis was accorded the testimony regarding the dog's performance.

Regarding the alleged absence of a direct link between appellant and the glove, screwdriver and flashlight, we find that from the dog's reaction to the glove the jury could have inferred that it belonged to appellant. As for the flashlight and screwdriver, we note that the jury found appellant not guilty of possession of criminal tools; accordingly, the absence of a direct link between appellant and the tools is not a fatal flaw in the state's case against appellant.

It is well-established that the probative force of both circumstantial and direct evidence is determined by the specific evidence presented and the applicable circumstances, not by any formal classifications. Further, despite the fact that the jury is often confronted with many plausible inferences, circumstantial evidence is not intrinsically inferior nor less probative than direct evidence. In *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 66 O.O. 2d 351, 309 N.E. 2d 897, syllabus, the court held:

"Circumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt."

In a more recent decision, the court stated:

"Whether a theory of innocence is reasonable must be determined in view of the weight and credibility that the fact finder gives the evidence, and an appellate court can reverse a conviction based in part on circumstantial evidence only where the evidence is insufficient as a matter of law to enable the fact finder to exclude a reasonable hypothesis of innocence." *State* v. *Hankerson* (1982), 70 Ohio St. 2d 87, 92, 24 O.O. 3d 155, 158, 434 N.E. 2d 1362, 1366.

After carefully reviewing the record below, we have concluded that sufficient evidence was presented to support the jury's finding of guilt beyond a reasonable doubt. We also find that the circumstantial evidence

was not, as a matter of law, as consistent with innocence as it was with a finding of guilt. Accordingly, we find appellant's sole assignment of error not well-taken.

On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial, and judgment of the Lucas County Court of Common Pleas is affirmed.

*Judgment affirmed.*

HANDWORK, P.J., and CONNORS, J., concur.