**Solomon Fitzgerald McDUFFIE,
Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. C7–91–2050.**

Court of Appeals of Minnesota.

March 10, 1992.

Review Denied April 13, 1992.

Steven P. Russett, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Gary S. McGlennen, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by
SCHUMACHER, P.J., and KALITOWSKI and MULALLY,* JJ.

## OPINION

KALITOWSKI, Judge.

Following a jury trial, appellant Solomon McDuffie was convicted of four counts of aggravated robbery. The trial court subsequently vacated one of appellant's convictions and denied further postconviction relief. On appeal, appellant claims the trial court erred in admitting identification and dog-tracking evidence. We affirm.

## FACTS

Around 10:25 p.m. on September 20, 1989, Mian Shoukat, Mohammed Anwar, and Salman Mazhar were returning to their apartment in Minneapolis. As the three men walked toward their home, a car pulled into a driveway in front of them. Two men got out of the car, approached them and demanded money. The taller of the two men had a gun. When Shoukat refused to turn over his wallet, the gunman struck him on the head with the gun while the shorter man held him from behind.

Off-duty University of Minnesota police officer John Wuorinen was driving by and saw the robbery in progress. Wuorinen got out of his car, identified himself as a police officer and ordered the assailants to stop. The two men fled the scene, heading in different directions. Wuorinen chased and eventually caught the gunman as he was attempting to climb over a fence.

Victims Mazhar and Anwar described the other assailant to police who had arrived on the scene. Officer Greg Mihelick received the description over the police radio and began patrolling the area. Roughly two blocks from the robbery scene, Mihelick spotted a man matching the suspect's description who was later identified as appellant. Mihelick stopped appellant as he approached the office of the Minnesota Public Interest Research Group (MPIRG), explained his reason for the stop and asked for identification. Other officers eventually arrived and appellant was placed in a squad car.

The officers who were still at the robbery scene learned that a suspect had been apprehended. Victim Mazhar told the officers that he thought he could identify his assailant. Officer Marie Przynski took Mazhar to the place where appellant had been apprehended. Przynski parked her car across the street from the car in which appellant was seated and pointed her spotlight toward the car. The three officers accompanying appellant had him step out of the squad car. When Mazhar saw appellant, he stated "that's him, he's one of them." Officer Przynski asked Mazhar if he was positive and Mazhar stated that he was.

In the meantime, several officers spoke with a witness who was in the area at the time of the robbery. The witness told the police that she saw a man jump over a fence and run away from the general area of the robbery. A police officer discovered a baseball cap and some money lying on the ground near the fence.

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

The police investigating the robbery contacted the canine unit of the St. Paul Police Department. Officer Michael Maloney and his police dog Callahan went to the scene. Maloney and his dog tracked the scent of the cap and money. The dog eventually led Maloney to the MPIRG building but became distracted. Officer Maloney and Callahan headed toward the street where police cars were parked. As Maloney and the dog approached the police cars, the dog pulled Maloney toward the car containing appellant, stood up on his hind legs and put his front paws on the back door of the car. Maloney concluded appellant was the person they had been tracking.

Following a pretrial hearing, the trial court ruled that testimony relating to Mazhar's show-up identification was admissible at trial. The court also ruled that the dog-tracking evidence would be admissible upon a proper foundational showing. To establish the requisite foundation, Officer Maloney testified extensively about his training and experience, the dog's training, experience and reliability and the circumstances surrounding the dog's tracking of appellant. The trial court determined that the state had established an adequate foundation and deemed the dog-tracking evidence admissible.

The jury found appellant guilty of four counts of aggravated robbery. The court sentenced appellant on three of the counts to concurrent terms of 48 months, 58 months, and 78 months. Appellant subsequently filed a petition for postconviction relief seeking a new trial on the grounds that the trial court erroneously admitted the show-up identification evidence and the dog-tracking evidence. He alternatively sought vacation of his conviction for count four of the complaint because the count involved the same victim as an earlier count.

The court vacated appellant's conviction for count four but denied all other postconviction relief. The court reaffirmed its pretrial ruling and concluded that the dog-tracking evidence and identification evidence were properly admitted. Appellant now challenges the trial court's denial of postconviction relief.

## ISSUES

I. Did the trial court err in admitting evidence of the show-up identification?

II. Did the trial court err in admitting the dog-tracking evidence?

## ANALYSIS

■ A petitioner seeking postconviction relief has the burden of proving by a preponderance of the evidence the facts alleged in the postconviction petition. Minn. Stat. § 590.04, subd. 3 (1990). On appeal, we will affirm a trial court's denial of relief if there is sufficient evidence in the record to support the trial court's postconviction findings. *Jackson v. State,* 447 N.W.2d 430, 433 (Minn.App.1989); *Herme v. State,* 384 N.W.2d 205, 207 (Minn.App.1986), *pet. for rev. denied* (Minn. May 22, 1986).

### I.

■ Appellant claims he was denied a fair trial when the trial court admitted evidence of Mazhar's show-up identification. Show-up identification evidence is admissible at trial where there was no substantial likelihood of misidentification. *See Neil v. Biggers,* 409 U.S. 188, 198, 201, 93 S.Ct. 375, 381, 383, 34 L.Ed.2d 401 (1972). The factors to be considered in determining the likelihood of misidentification are:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* 409 U.S. at 199, 93 S.Ct. at 382.

■ An examination of the relevant factors indicates that there was not a substantial likelihood of misidentification. Mazhar had the opportunity to view his assailants for several minutes as they robbed him and his companions. He described the shorter assailant, and the description fit appellant who was ap-

prehended shortly after the robbery only a few blocks from the robbery scene. Mazhar identified appellant as one of the robbers less than a half-hour after the robbery and indicated to the police that he was certain of his identification. The record therefore supports the trial court's conclusion that the identification evidence was admissible at trial.

## II.

Appellant contends he was denied a fair trial when the trial court admitted Officer Maloney's testimony about his police dog's tracking of appellant. Prior to trial, appellant sought to suppress the dog-tracking evidence on the grounds that it constituted hearsay, violated his right to confrontation and was more prejudicial than probative. He also argued that the evidence lacked sufficient foundation for admission. The trial court rejected these arguments and ruled that the evidence was admissible at trial. The court affirmed this ruling in its postconviction order.

The Minnesota Supreme Court considered the admissibility of dog-tracking evidence in *Crosby v. Moriarty*, 148 Minn. 201, 181 N.W. 199 (1921). The *Crosby* court refused to decide whether dog-tracking evidence was admissible in Minnesota because the court determined that even if such evidence was generally admissible, the evidence in the case before it lacked sufficient foundation for admission and was void of any probative value. *Id.* at 204–05, 181 N.W. at 200. In reaching its decision, the court noted that other jurisdictions had established foundational requirements for admission of dog-tracking evidence and concluded that these requirements had not been met. *Id.* at 205–06, 181 N.W. at 200–01.

■ The majority of states hold that dog-tracking evidence is admissible if a proper foundation is established. *Commonwealth v. Michaux*, 520 A.2d 1177, 1179 (1987); *Wilkie v. State*, 715 P.2d 1199, 1203 (Alaska App.1986). The specific foundational requirements differ somewhat from state to state. In general, however,

courts allowing dog-tracking evidence have required a showing of:

(1) the experience, qualifications and training of the dog's handler

(2) the dog's experience, skill, training and reliability as a tracker and

(3) the circumstances of the tracking itself

*See Michaux*, 520 A.2d at 1179; *State v. Streeper*, 113 Idaho 662, 747 P.2d 71, 76 (1987); *Wilkie*, 715 P.2d at 1203; *Cook v. State*, 374 A.2d 264, 270 (Del.1977).

■ We agree with the majority of jurisdictions that if the above factors have been adequately established, dog-tracking evidence should be admissible at trial. Once the basic foundational requirements have been met, any alleged weakness in the evidence goes to the weight of the evidence rather than its admissibility. We believe juries can critically evaluate dog-tracking evidence and accord it the proper weight. We note, however, that dog-tracking evidence should be used only to corroborate other evidence and is not sufficient standing alone to support a conviction. *See Streeper*, 747 P.2d at 76 n. 8; *Michaux*, 520 A.2d at 1180.

■ In the instant case, the evidence supports the postconviction court's conclusion that a sufficient foundation was established for admission of the dog-tracking evidence. Officer Maloney testified at length about his training, experience and qualifications as a dog handler. He also testified about his police dog's training, experience and reliability as a tracker. Finally, he testified about the tracking itself. His testimony established that the tracking conditions were favorable and the dog was placed on the track shortly after the suspect fled at a point where the suspect was shown to have been. We agree with the trial court that Officer Maloney's testimony was sufficient to establish the foundation for admission of the dog-tracking evidence.

■ Appellant argues that the dog-tracking evidence was unreliable and should not have been admitted because the dog was distracted and went off the track at one

point. Because the foundation requirements were adequately met, we believe this alleged weakness goes to the weight rather than the admissibility of the evidence. In addition the trial court instructed the jury to subject the dog-tracking evidence to careful examination and to view it with great caution. Finally, there was ample evidence linking appellant to the robbery in addition to the dog-tracking evidence.

### DECISION

The trial court did not err in ruling that the identification evidence and the dog-tracking evidence were admissible at trial.

Affirmed.